## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, 1101 K Street N.W., Suite 201 Washington, D.C. 20005,<br><br>               Plaintiff,<br><br>   v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY, 1200 Pennsylvania Avenue, N.W. Washington, D.C. 20460, and<br><br>ANDREW WHEELER, in his official capacity as Administrator of the U.S. Environmental Protection Agency, 1200 Pennsylvania Avenue, N.W. Washington, D.C. 20460,<br><br>             Defendants. | Civil Action No. _____ |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") brings this action against Defendants U.S. Environmental Protection Agency and Andrew Wheeler, in his official capacity as Administrator of the U.S. Environmental Protection Agency (collectively, "EPA"), alleging as follows:

### INTRODUCTION

1.     This is an action for injunctive and declaratory relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, challenging EPA's final rule amending the agency's Freedom of Information Act ("FOIA") regulations.  *See* FOIA Regulations Update, 84 Fed. Reg. 30,028 (June 26, 2019) (to

be codified at 40 C.F.R. § 2) ("FOIA Rule" or "2019 FOIA Rule").  The FOIA Rule is both

procedurally and substantively defective and must therefore be vacated.

2.      Under current agency leadership, FOIA administration at EPA has become

increasingly politicized.  The FOIA Rule is the latest example of that politicization.  The rule

expressly authorizes political appointees to make "final determinations" on FOIA requests, rather

than leaving those decisions to career officials who have the experience and qualifications

necessary to make FOIA determinations.  And it requires that all FOIA requests be submitted to

EPA's National FOIA Office in Washington, D.C., where most of EPA's political appointees are

located.

3.      Despite intense public interest in the FOIA Rule, EPA hastily adopted it without

following the APA's notice-and-comment requirements.  In so proceeding, the agency invoked

the "procedural rule" and "good cause" exceptions to the APA's rulemaking procedures.  But the

FOIA Rule fits neither exception because, among other things, it expressly amends an existing

legislative rule that was adopted through notice and comment; it effects substantive changes in

the law and adopts new positions that are inconsistent with prior regulations and policy; the

changes are not, as EPA claims, compelled by statute; and there is strong public interest in the

rule, as evidenced by the outpouring of criticism EPA has received following its announcement.

4.      In addition to being procedurally infirm, the FOIA Rule is arbitrary and

capricious because it fails to provide a reasoned explanation for the revisions made; fails to

acknowledge, let alone provide a reasoned explanation for, significant changes it makes in the

agency's existing regulations and policy; and fails altogether to consider important factors.

5.      The FOIA Rule is also contrary to law insofar as it authorizes the agency to segregate and withhold non-responsive portions of responsive records, contrary to FOIA's plain text and the D.C. Circuit's decision in *American Immigration Lawyers Ass'n v. Executive Office for Immigration Review*, 830 F.3d 667, 677 (D.C. Cir. 2016).

6.      CREW is a frequent FOIA requester that relies on records obtained through FOIA to fulfill its organizational mission.  It has several FOIA requests pending with EPA that implicate politically-sensitive issues and thus are highly likely to undergo political-appointee-review pursuant to the FOIA Rule, and plans to submit similar requests in the future.  CREW thus has concrete and particularized interests that are at substantial risk of being adversely affected by the FOIA Rule.

7.      Accordingly, CREW respectfully requests that the FOIA Rule be declared unlawful and vacated on the grounds that it was adopted "without observance of procedure required by law," and is "arbitrary, capricious, . . . otherwise not in accordance with law," and "in excess of statutory jurisdiction, authority, or limitations."  5 U.S.C. § 706.

## JURISDICTION AND VENUE

8.      This action arises under the APA, 5 U.S.C. § 701, *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*  This Court has personal and subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (action arising under the laws of the United States).

9.      Venue lies in this district pursuant to 28 U.S.C. § 1391(e).

## PARTIES

10.     Plaintiff CREW is a non-profit, non-partisan organization organized under section 501(c)(3) of the Internal Revenue Code.  CREW is committed to protecting the rights of citizens

to be informed about the activities of government officials and agencies, and to ensuring the

integrity of government officials and agencies.  CREW seeks to empower citizens to have an

influential voice in government decisions and in the government decision-making process

through the dissemination of information about public officials and their actions.  To further its

mission of promoting government transparency and accountability, CREW frequently files FOIA

requests (with EPA and other agencies); disseminates the documents it receives through FOIA

requests on its website, www.citizensforethics.org, and social media; and uses the documents as

the basis for reports, complaints, litigation, blog posts, and other publications widely

disseminated to the public.

11.     Defendant EPA is an agency within the meaning of the APA, 5 U.S.C. § 701.

EPA operates under the supervision and direction of the EPA Administrator.

12.     Defendant Andrew Wheeler is the Administrator of EPA and is sued in his

official capacity only.

## FACTS

I.     **EPA's 2002 FOIA Rule**

13.     Prior to the 2019 FOIA Rule, EPA had last amended its FOIA regulations by final

rule issued November 5, 2002.  *See* Revised FOIA Regulations, 67 Fed. Reg. 67,303 (Nov. 5,

2002) (codified at 40 C.F.R. § 2) ("2002 FOIA Rule").

14.     In adopting the 2002 FOIA Rule, EPA followed the APA's rulemaking

procedures, including notice-and-comment, and expressly invoked the agency's rulemaking

authority.  *See* 67 Fed. Reg. at 67,304; Revised FOIA Regulations, 65 Fed. Reg. 19,703 (April

12, 2000) (Proposed Rule).

15.     Under former § 2.101 and § 2.102, requesters could seek records from EPA headquarters in Washington, D.C. or, if appropriate, any of EPA's ten regional field offices.  40 C.F.R. §§ 2.101(a), 2.102(a) (2018).

16.     Former § 2.103, entitled "Responsibility for responding to requests," provided that "[i]n general . . . the EPA office that has possession of that record is the office responsible for responding to you."  40 C.F.R. § 2.103(a) (2018).

17.     Former § 2.103 further provided that, regarding the "[a]uthority to grant or deny requests," the "head of an office, or that individual's designee, is authorized to grant or deny any request for a record of that office or other Agency records when appropriate."  40 C.F.R. § 2.103(b) (2018).

18.     Former § 2.104(h) authorized certain political appointees—namely, the "Deputy Administrator, Assistant Administrators, Regional Administrators, the General Counsel, the Inspector General, Associate Administrators, and heads of headquarters staff offices—to issue "*initial* determinations" on FOIA requests, but did not grant those officials authority to issue *final* determinations.  40 C.F.R. § 2.104(h) (2018) (emphasis added).

19.     Former § 2.104(h) also restricted who could be delegated authority to issue FOIA determinations, providing that "the authority to issue initial denials of requests for existing, located records (other than initial denials based solely on § 2.204(d)(1)) may be redelegated only to persons occupying positions not lower than division director or equivalent."  40 C.F.R. § 2.104(h) (2018).

**II.      Politicization of FOIA at EPA under the Trump Administration**

20.      Prior to the Trump Administration, political appointees at EPA were rarely involved in FOIA processes.  That changed dramatically under the tenure of former EPA Administrator Scott Pruitt.

21.      For instance, Mr. Pruitt personally instructed his staff not to respond to FOIA requests relating to his tenure at the agency until requests from the Obama Administration had been completed.  This politically-motivated decision was contrary to the "multitrack processing" approach required by EPA's FOIA regulations, under which requests must be prioritized based on their complexity, rather than the date of receipt.  *See* 40 C.F.R. § 2.104(c).

22.      Mr. Pruitt also instituted what some have called a "political awareness review" policy, under which political appointees (rather than career officials) reviewed and approved responses to "politically charged" FOIA requests prior to release.  "Politically charged" requests included requests seeking communications with the Office of the Administrator or other senior EPA officials.

23.      Mr. Pruitt resigned from EPA in July 2018, amid a flurry of ethics scandals.

24.      On November 16, 2018, EPA's Chief of Staff, Ryan Jackson, issued an internal memorandum entitled "Awareness Notification Process for Select Freedom of Information Act Releases," *available at* https://bit.ly/2XXYhlD ("Jackson Memorandum").  The memorandum "sets forth the [FOIA] awareness notification process to be followed at the agency," and "supersede[d] any prior process, procedure, guidance, or instruction," seemingly including the political awareness review policy instituted by Mr. Pruitt.  Jackson Memorandum at 1.

25.     The Jackson Memorandum states that the "awareness notification process is not an approval process." *Id.* It adds that, "[c]onsistent with the agency's FOIA policy and procedures, FOIA staff, program staff and program managers will continue to determine whether information should be released or withheld under FOIA's exemptions." *Id.* The memorandum then sets forth detailed procedures to be followed in notifying "agency senior leadership" of FOIA responses that "may be of particular interest to the press, the public and/or Congress." *Id.* at 1-3.

26.     Publicly-available data indicates that political-appointee review significantly delays EPA's FOIA processing times. For instance, data shows that between January 20 and December 29, 2017, only 16.6% of FOIA requests routed to the Office of the Administrator were closed, in sharp contrast to the 78.76% closure rate for all other requests made to EPA during the same period. *See* Andrew Bergman, EPA Drags Its Feet with Records Requests Aimed at Scott Pruitt's Office, *Project on Gov't Oversight*, Feb. 25, 2018, *available at* https://bit.ly/2GnYnbE. This is consistent with the general understanding "that the involvement of political appointees making [FOIA] determinations can add unnecessary delays to the [FOIA] review process, potentially violating FOIA's statutory deadlines." July 22, 2019 Letter from Sens. Leahy, Grassley, Feinstein, and Cornyn to EPA Administrator Wheeler, *available at* https://bit.ly/2StVMS8.

## III.    EPA's 2019 FOIA Rule

27.     On June 26, 2019, EPA announced the FOIA Rule, with an effective date of July 26, 2019. 84 Fed. Reg. at 30,028. According to the rule summary, EPA was "tak[ing] final

action to revise the Agency's regulations under [FOIA] . . . by updating the process by which the public may access information about EPA actions and activities." *Id.*

28. The FOIA Rule expressly amends EPA's existing FOIA regulations, as adopted in the 2002 FOIA Rule and codified at 40 C.F.R. § 2. As outlined below, the FOIA Rule alters 40 C.F.R. § 2 in several ways to consolidate decisionmaking authority with EPA political appointees and EPA's National FOIA Office.

**A.     Requiring that All Requests be Submitted to EPA's National FOIA Office**

29. Under revised § 2.101, § 2102, and § 2.103(a), all FOIA requests must be submitted to EPA's National FOIA Office in Washington, D.C. *See* 84 Fed. Reg. at 30,032-33. Upon "receipt of a FOIA request," the "National FOIA Office will assign the request to an appropriate office within the Agency for processing." *Id.* at 30,033. This changed the prior regulations, which allowed requesters to submit requests to EPA headquarters or any appropriate regional office, 40 C.F.R. §§ 2.101-103 (2018), and provided that, "[i]n general . . . the EPA office that has possession of that record is the office responsible for responding to you," *id.* § 2.103(a).

30. The FOIA Rule indicates that these revisions are "required" by, or at least "relate[] to," the 2007 amendments to FOIA. 84 Fed. Reg. at 30,029-30. But nothing in the 2007 amendments *requires* agencies to centralize the submission process for FOIA requests as EPA has done in the FOIA Rule.

31. The FOIA Rule states that the revision was designed to "minimize the number of misdirected requests sent to the Agency" and "to address" a provision of the 2007 FOIA amendments that "decreased the amount of time an agency may take to route a request to the

appropriate component of the agency to ten-working days or less."  84 Fed. at 30,030.  But the rule does not explain why precluding requesters from submitting FOIA requests to a relevant EPA regional office, and instead requiring them to submit all requests to the National FOIA Office, would minimize the number of misdirected requests or result in timelier processing of requests.  In fact, the FOIA Rule is devoid of any analysis of whether requiring that all requests be submitted to the National FOIA Office would further the goals of efficiency or expediency in FOIA processing.

32.     Meanwhile, the agency's latest annual FOIA report shows that EPA Headquarters has a substantially larger FOIA workload and slower processing rates than the agency's regional offices.  *See* EPA FOIA Annual Report for FY 2018 §§ V, XII, VII, *available at* https://bit.ly/2Lz5h1J (reporting that 2,772 of the agency's total 3,730 outstanding FOIA requests at the end of FY 2018 were pending with EPA Headquarters; that EPA Headquarters had 2,360 backlogged requests, whereas the highest backlog at any regional office was 128 requests; and that the average response times were significantly higher at EPA Headquarters than at any regional office in most instances).  Similarly, an internal audit of EPA's FOIA program in 2006 found that only 23% of EPA career staff favored centralizing FOIA processing at EPA headquarters, based on concerns of lack of resources and staffing necessary to support such centralization efforts.  *See* Evaluation of EPA's FOIA Program, Final Report, at 39, 41-42, 46, Feb. 12, 2016, *available at* https://bit.ly/2ygSOHz.  It follows that increasing the National FOIA Office's existing FOIA workload, as the FOIA Rule does, will likely lead to *further* delays in FOIA processing.  Again, the FOIA Rule fails entirely to address this critical issue.

9

**B.      Authorizing Political Appointees to Issue Final FOIA Determinations**

33.      Revised § 2.103(b) provides that, regarding the "[a]uthority to issue final

determinations," the "Administrator, Deputy Administrators, Assistant Administrators, Deputy

Assistant Administrators, Regional Administrators, Deputy Regional Administrators, General

Counsel, Deputy General Counsels, Regional Counsels, Deputy Regional Counsels, and

Inspector General or those individuals' delegates, are authorized to make determinations required

by 5 U.S.C. § 552(a)(6)(A), including to issue final determinations whether to release or

withhold a record or a portion of a record on the basis of responsiveness or under one or more

exemptions under the FOIA, and to issue 'no records' responses."  84 Fed. Reg. at 30,033.  This

changed the prior regulation, which provided that "[t]he head of an office, or that individual's

designee, is authorized to grant or deny any request for a record of that office or other Agency

records when appropriate," 40 C.F.R. § 2.103(b) (2018), and that the "Deputy Administrator,

Assistant Administrators, Regional Administrators, the General Counsel, the Inspector General,

Associate Administrators, and heads of headquarters staff offices" only had authority to issue

"initial determinations" on FOIA requests, not final determinations, *id.* § 2.104(h).  It also

reflects a change in existing agency policy and procedures, under which only career staff would

"determine whether information should be released or withheld under FOIA's exemptions."

Jackson Memorandum at 1.

34.      The FOIA Rule's preamble provides the following explanation for this revision:

"This change eliminates a potential conflict in the existing regulations and ensures consistency of

responses across the Agency.  The previous regulations contained a potential inconsistency.

EPA simplifies and consolidates section 2.103(b), which empowered the 'head of an office, or

10

that individual's designee' to grant or deny requests, and section 2.104(h), which empowered division directors or equivalents authority to issue 'denials.'" 84 Fed. Reg. at 30,031.

35.     The FOIA Rule does not explain the agency's reasons for granting authority to issue final FOIA determinations to the specific political appointees listed in revised § 2.103(b). The rule also does not acknowledge that this revision reflects a change in existing agency policy and procedures, under which only career staff would "determine whether information should be released or withheld under FOIA's exemptions," nor does it explain the agency's reasons for changing its position on this issue.

**C.     Removing Restrictions on Delegating Authority to Issue Final FOIA Determinations**

36.     As noted, revised § 2.103(b) authorizes certain political appointees and those "individuals' delegates" to issue final determinations on FOIA requests. Revised § 2.104(h), in turn, eliminates the provision stating that "the authority to issue initial denials of requests for existing, located records (other than initial denials based solely on § 2.204(d)(1)) may be redelegated only to persons occupying positions not lower than division director or equivalent." 40 C.F.R. § 2.104(h) (2018).

37.     The FOIA Rule's preamble states this revision "clarifies the authorities, and delegation of the authority, because the term 'division director' is not easily interpreted across the Agency. The Agency does not intend to affect the Agency's use of delegation directives to set forth specific rules and limitations regarding who may be delegated FOIA decision making authority; it is not necessary to set forth such delegations, and limitations, in Agency regulations." 84 Fed. Reg. at 30,031.

38. The FOIA Rule does not acknowledge that the revised regulation outright removes restrictions on delegations of authority put into place by former § 2.104(h), nor does it provide an explanation for this revision, which would seemingly allow the political appointees enumerated in § 2.103(b) to delegate authority to issue final FOIA determinations to anyone at the agency.

**D.   No Notice and Comment**

39. EPA adopted the FOIA Rule without prior notice and comment. The FOIA Rule's preamble asserts that EPA bypassed the APA's default rulemaking procedures pursuant to the statute's "good cause and procedural exceptions," and appears to invoke both exceptions with respect to the changes outlined above. *See* 84 Fed. Reg. at 30,029. The preamble asserts that the procedural exception applies insofar as the FOIA Rule merely "update[s] the EPA's rules to accurately reflect the Agency's organizational structure and implement statutorily directed changes, which are self-executing," and does "not change the substantive standards the Agency applies in implementing the FOIA to the extent they conform with the Act and the 2007. 2009, and 2016 Amendments." *Id.* The preamble further claims that the good cause exception applies based on EPA's determination that "notice and opportunity for comment on the revisions . . . is unnecessary because the agency lacks discretion to reach a different outcome in response to comment." *Id.*

40. Despite the lack of a notice-and-comment period, the FOIA Rule has generated substantial public interest. To date, a bipartisan group of five members of Congress and over 50 organizations have submitted letters urging the agency not to adopt the FOIA Rule or, at

12

minimum, to open the rule up to public comment before adopting it.[1]  The rule has also received

significant media coverage.[2]

## PLAINTIFF'S INJURIES

41.     As alleged above in paragraph 10, Plaintiff CREW routinely submits FOIA

requests and utilizes records obtained through FOIA as part of its organizational mission of

promoting government transparency and accountability.

42.     CREW has a particularly strong interest in EPA's FOIA policies and practices.

Since 2017, CREW has submitted at least 17 FOIA requests to EPA, 13 of which are still

pending.  Those pending FOIA requests include the following:

        a.     A May 2018 request seeking records relating to EPA's "awareness

        review" or "senior management review" processes, under which "'high-

        level officials' at EPA are involved in reviewing FOIA responses before

        they are publicly released";

---

[1] *See* July 22, 2019 Letter from Sens. Leahy, Grassley, Feinstein, and Cornyn to EPA, *available at* https://bit.ly/2StVMS8; Press Release, Rep. Porter Sounds Alarm on Lack of Transparency in Trump Administration's New Regulation, July 9, 2019, *available at* https://bit.ly/2XTVcmA; Envtl. Integrity Project, et al., Concerns Over EPA's "FOIA Regulations Update" Final Rule, July 9, 2019, *available at* https://bit.ly/2GlNeI9; Reporters Committee for Freedom of the Press, et al., Proposed Revisions to the EPA's FOIA Regulations, July 9, 2019, *available at* https://bit.ly/30paegY; June 26, 2019 Letter from Soc'y of Envtl. Journalists to EPA, *available at* https://bit.ly/2JDDI5b.

[2] *See, e.g.*, Rebecca Beitsch, Environmental groups fight EPA's new FOIA rule, *The Hill*, July 8, 2019, *available at* https://bit.ly/32CWXU0; Gregory Wallace & Ellie Kaufman, EPA changes transparency rules, *CNN*, June 26, 2019, *available at* https://cnn.it/2xTdN2S; Meg Cunningham, EPA rule lets political officials block FOIA document requests, *Roll Call*, June 26, 2019, *available at* https://bit.ly/2JFNsMf; Julia Conley, Emulating the CIA, New Rule Would Let Trump's EPA Disregard FOIA Requests With Near Impunity, *Common Dreams*, June 25, 2019, *available at* https://bit.ly/2O3Wffl.

b.   A March 2019 request seeking records relating to efforts by the pesticide industry to convince political appointees at EPAs to block public release of a report on certain pesticides' adverse effects on endangered species;

c.   A September 2018 request seeking various categories of records relating to political travel by presidentially-appointed Senate confirmed officials at EPA; and

d.   A July 2018 request seeking communications relating to the company Syngenta, following a decision by EPA leadership to reduce a fine against that company by approximately $4.79 billion.

43.   CREW plans to continue submitting FOIA requests to EPA on matters central to CREW's ongoing research, litigation, advocacy, and public education efforts, including requests implicating high-level political appointees at EPA.

44.   There is a substantial, if not certain, risk that the FOIA Rule will adversely impact CREW's pending and future FOIA requests.  Insofar as CREW's pending and future requests implicate high-level political appointees at EPA, EPA's responses to those requests will almost certainly be subject to review and approval in accordance with the FOIA Rule's political-appointee review provisions.  And insofar as the FOIA Rule requires that *all* requests be submitted to EPA's National FOIA Office and forbids requesters from submitting requests to any regional office, the rule unequivocally requires an immediate change in requesters' FOIA practices.  Moreover, it is highly likely that the FOIA Rule will cause increased delay in EPA's responses to CREW's pending and future FOIA requests.  Indeed, as alleged above in paragraphs 26 and 32, publicly-available data indicates both that authorizing political appointees to issue

14

FOIA determinations and requiring that all requests be submitted to the National FOIA Office at

EPA Headquarters will lead to further delays in the agency's FOIA processing, impeding

CREW's statutory right under FOIA to timely access to requested records.  Finally, insofar as the

FOIA Rule purports to authorize EPA to withhold information that CREW is entitled to receive

by law (e.g., non-responsive portions of responsive records), it further harms CREW.

45.    Accordingly, CREW has concrete and particularized interests that will be

impaired by the FOIA Rule.

**PLAINTIFF'S CLAIMS FOR RELIEF**

**<u>Count 1</u>**
**(Violation of APA – Failure to Comply with Rulemaking Procedures)**

46.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

47.    EPA's promulgation of the FOIA Rule constitutes rulemaking within the meaning

of the APA, 5 U.S.C. § 551(5), and was therefore subject to the APA's notice-and-comment

requirements, 5 U.S.C. § 553.

48.    EPA's promulgation of the FOIA Rule without complying with the APA's notice-

and-comment requirements was without observance of procedure required by law, in violation of

the APA, 5 U.S.C. § 706.

49.    The FOIA Rule does not qualify as a "interpretative rule[], general statement[] of

policy, or rule[] of agency organization, procedure, or practice" exempt from notice and

comment under 5 U.S.C. § 553(b)(3)(A) because, among other things, the FOIA Rule expressly

amends an existing legislative rule that was adopted through notice and comment and codified in

the Code of Federal Regulations; it adopts a new position inconsistent with existing regulations

15

or policy and otherwise effects a substantive change in existing regulations or policy; and it trenches on substantial private rights and interests.

50.    The FOIA Rule does not demonstrate that notice and comment is "unnecessary" under the "good cause" exemption of 5 U.S.C. § 553(b)(3)(B) because, among other things, the revisions identified above are not, as EPA claims, compelled by statute.  Nor could the rule be characterized as insignificant in nature and impact or inconsequential to the public, particularly given the intense public interest the rule has already generated.

**Count 2**
**(Violation of APA – Arbitrary and Capricious Agency Action)**

51.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

52.    The FOIA Rule is agency action within the meaning of the APA, 5 U.S.C. § 551(13).

53.    The FOIA Rule is arbitrary and capricious agency action within the meaning of the APA, 5 U.S.C. § 706, because, as outlined above in paragraphs 29-38, it fails to provide a reasoned explanation for each of the revisions made; it fails altogether to acknowledge that certain revisions reflect changes in existing agency regulations and policy, and likewise fails to provide any explanation for those changes; and it fails altogether to consider important factors.

**Count 3**
**(Violation of APA – Agency Action Contrary to Law)**

54.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

55.    The FOIA Rule is agency action within the meaning of the APA, 5 U.S.C. § 551(13).

16

56.     Insofar as § 2.103(b) of the FOIA Rule purports to authorize agency officials to "withhold . . . a portion of a record on the basis of responsiveness," 84 Fed. Reg. at 30,033, it violates FOIA.  *See American Immigration Lawyers Ass'n v. Executive Office for Immigration Review*, 830 F.3d 667, 677-79 (D.C. Cir. 2016) (holding that FOIA does not allow agencies to redact non-responsive, non-exempt portions of responsive records).

57.     Accordingly, § 2.103(b) of the FOIA Rule is "not accordance with law" and "in excess of statutory jurisdiction, authority, or limitations" under the APA, 5 U.S.C. § 706.

## Count 4 (in the alternative to Count 3)
### (Violation of FOIA – Unlawful Policy or Practice)

58.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

59.     Insofar as the claim alleged above in Count 3 is deemed to seek relief challenging an unlawful FOIA policy or practice within the Court's equitable authority under FOIA, 5 U.S.C. § 552(a)(4)(B), Plaintiff pleads such a claim under FOIA in the alternative to Count 3.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1.     Declare that EPA violated the APA in issuing the 2019 FOIA Rule and that the rule is unlawful;

2.     Vacate the 2019 FOIA Rule and direct EPA to reinstate the 2002 FOIA Rule;

3.     Award Plaintiff its costs and reasonable attorneys' fees in this action; and

4.     Grant any other relief the Court deems appropriate.

17

Date: July 23, 2019

/s/ Nikhel Sus
NIKHEL S. SUS
(D.C. Bar No. 1017937)
ANNE L. WEISMANN
(D.C. Bar No. 298190)
Citizens for Responsibility and Ethics in
Washington
1101 K St. NW, Suite 201
Washington, D.C. 20005
Telephone: (202) 408-5565
Fax: (202) 588-5020
nsus@citizensforethics.org
aweismann@citizensforethics.org

*Counsel for Plaintiff*