**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-2181 (KBJ) |
| | ) | |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, et al., | ) ) | (consolidated with 19-2198 and 19-3270) |
| | ) | |
| Defendants. | ) | |
| | ) | |

**SUR-REPLY IN OPPOSITION TO PLAINTIFFS'
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants Environmental Protection Agency and Administrator Andrew Wheeler respectfully submit this surreply in opposition to Plaintiffs' Cross-Motion for Partial Summary Judgment in civil action number 19-3270, one of the cases in this consolidated action. For the reasons discussed below, the new evidence submitted with Plaintiffs' Reply in Support of Plaintiffs' Cross-Motion for Partial Summary Judgment ("Reply") does not support Plaintiffs' arguments.

**I.      Plaintiffs' New Evidence Does Not Suggest EPA's Changes to Its FOIA Regulations Have Caused Any Processing Delays for Plaintiffs' FOIA Requests**

Plaintiffs argue that EPA's centralization of FOIA intake procedures within EPA's National FOIA Office ("NFO") "has already begun causing delays." Reply at 4. According to Plaintiffs, Plaintiff Ecological Rights Foundation ("ERF") submitted a FOIA request to EPA on October 29, 2019, and "EPA did not communicate with Ecological Rights Foundation at all regarding this request until February 10, 2020 at which point EPA informed Ecological Rights Foundation that the request had been transferred from EPA Headquarters, the mandatory site of

intake to EPA region 9." Second Declaration of Stuart Wilcox ¶ 2. Plaintiffs' assertion is incorrect. In fact, EPA communicated numerous times with ERF, and indeed with Mr. Wilcox specifically, between the time the request was submitted on October 29, 2019, and December 27, 2019, when EPA informed ERF that the request would be reassigned to Region 9. Declaration of Timothy Epp ¶¶ 6-12.

Moreover, when ERF submitted the FOIA request, ERF selected EPA headquarters from a list (that also included each of EPA's ten regions). *Id*. ¶ 5. Consistent with ERF's selection and EPA's determination that certain of the 14 parts of the FOIA request sought information from custodians in the Office of the Administrator, EPA initially assigned the request to the Office of the Administrator on November 19, 2019, *id*. ¶¶ 4, 5, 8, and later determined that it should be reassigned to Region 9, *id*. ¶ 12. While the request was at headquarters, EPA performed other work on the request, including issuing decisions on ERF's requests for expedited processing and for a fee waiver. *See id*. ¶¶ 6-11. These facts contradict Plaintiffs' assertion that EPA's handling of this request is evidence that the centralization of intake is causing processing delays, rather than delays that would have occurred in any event if intake were decentralized. The same intake work would have to be done regardless of whether the system is centralized or decentralized.

## II.  Plaintiffs' New Evidence Does Not Show Political Interference With Plaintiffs' FOIA Requests

Next, Plaintiffs argue that they have "shown significant political interference with FOIA" because "EcoRights recently received records indicating that several of its FOIA requests have been subject to 'awareness review[.]'" Reply at 4 (citing Wilcox Decl. ¶ 3, Ex. 2 at 5, Ex. 3 at 14); *see also id*. at 11 ("records obtained through FOIA show that at least two of EcoRights' recent FOIA requests have been subjected to the aforementioned 'awareness review process' for 'politically charged' requests."). What Plaintiffs call the "awareness review process" is actually

EPA's November 16, 2018 Awareness Notification Process for Select Freedom of Information Act Releases, attached as Exhibit 4 to the Wilcox Declaration.  Nothing about the Awareness Notification Process suggests "significant political interference with FOIA," as Plaintiffs claim. By its terms, the notification process is "intended to inform senior officials of the release of information through FOIA that may be of particular interest to the press, the public and/or Congress" so that agency leadership can "respond efficiently to inquiries about such releases." Wilcox Decl., Ex. 4 at 1.  It is expressly "not an approval process, nor does it alter or eliminate any part of the agency's existing procedures for collecting, reviewing or redacting documents, or preparing responses to FOIA requests."  *Id*.  The process appropriately allows specified officials in offices that need to be aware of significant record releases (*e.g.*, the offices responsible for public affairs and congressional and intergovernmental relations) the opportunity to review documents that are scheduled to be released to the public.  *Id*. at 2-3.  Plaintiffs' description of this process as "political interference" is unsupported and deeply mistaken.  More importantly, for the purposes of Plaintiffs' complaint in this case, the Awareness Notification Process predates EPA's 2019 FOIA Rule and therefore could not possibly constitute evidence that *the Rule* has caused "political interference" with Plaintiffs' FOIA requests.

### III.    EPA Did Not Withhold Nonresponsive Portions of Responsive Documents From Plaintiffs

Lastly, Plaintiffs argue that their new evidence shows that "EPA withheld allegedly nonresponsive portions of responsive records from EcoRights mere days before it filed its brief in this case."  Reply at 12-13 (describing this as "the most damning piece of information"); *see also id*. at 14-16; *see also* Wilcox Decl. ¶ 6 & Ex. 7.  But EPA did not withhold nonresponsive portions of a FOIA record in Plaintiffs' Exhibit 7.  Instead, EPA redacted records that were not part of the requested record contained in Exhibit 7.  *See* Declaration of Elizabeth White ¶¶ 8-9.

3

Specifically, EcoRights' FOIA request sought Administrator Wheeler's electronic calendar from the Outlook software program, among other records. *Id*. ¶ 7. EPA determined that a particular Outlook calendar constitutes a single record for purposes of EcoRights' FOIA request. Because an Outlook calendar is a computer software application, the requested calendar must be converted into a format that can be produced to the requester. As discussed in the White Declaration, the technical process used to convert the calendar into a PDF format for FOIA production *adds* additional information to the PDF containing the calendar record – information that is *not* contained in the Outlook version of the calendar. *Id*. ¶¶ 8-9. Specifically, in order to create the PDF version of Administrator Wheeler's Outlook calendar, an EPA employee exported the calendar from Outlook and emailed themselves the Outlook calendar and then converted that email attachment to PDF. *Id.* ¶ 8. When the calendar was printed to PDF, it was embedded in an email from the employee who printed the calendar. *Id*. As a result, the final PDF product included a header with the name of the employee who generated the PDF of the calendar and the subject line of the email and a footer of the same employee's name and signature block. *Id*. ¶¶ 8-9; *see also* Pls.' Ex. 7 (non-responsive header and footer blocks). Accordingly, the single PDF contains additional records beyond the calendar itself.

Contrary to Plaintiffs' argument, EPA's redaction of records added through the PDF conversion process and contained in the PDF printout did not violate *American Immigration Lawyers Association v. Executive Office for Immigration Review*, 830 F.3d 667 (D.C. Cir. 2016). In that case, the D.C. Circuit left open "the antecedent question of what constitutes a distinct 'record' for FOIA purposes[.]" *Id*. at 678 (explaining that "agencies . . . in effect define a 'record' when they undertake the process of identifying records that are responsive to a request"); *see also Shapiro v. CIA*, 247 F. Supp. 3d 53, 73-75 (D.D.C. 2017) (concluding that the FBI did not violate

4

*AILA* where it withheld non-responsive portions of a multi-topic document based on the FBI's determination of what constitutes a record). But the Court need not determine whether EPA properly determined that the calendar is a complete record. For purposes of this case, the relevant point is that EPA redacted information because it determined that the non-responsive records were not part of the requested record. EPA did not withhold that information because EPA decided that it was appropriate under EPA's regulations to withhold a nonresponsive portion of a responsive record, as Plaintiffs surmise. Accordingly, these withholdings do not support Plaintiffs' view that EPA interprets its regulations to allow it to withhold a nonresponsive portion of a responsive record.

<div style="margin-left: 40%;">

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director, Federal Programs Branch

/s/ *Joshua Kolsky*
JOSHUA M. KOLSKY
Trial Attorney
D.C. Bar No. 993430
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW Washington, DC 20005
Tel.: (202) 305-7664
Fax: (202) 616-8470
E-mail: joshua.kolsky@usdoj.gov

*Attorneys for Defendant*

</div>