UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, et al., <br><br> Plaintiff, <br><br> v. <br><br> U.S. ENVIRONMENTAL PROTECTION AGENCY, et al., <br><br> Defendants. | ) ) ) ) ) ) ) Civil Action No. 19-2181 (FYP) ) ) (consolidated with 19-2198 and 19-3270) ) ) ) ) ) |

**DEFENDANTS' REPLY MEMORANDUM REGARDING
PROPOSED REMAND WITH VACATUR**

The parties agree that the Court should remand Claim Four in this case.  *See* Pls' Mem. in Supp. of Remand with Vacatur ("Pls' Mem."), ECF No. 57, at 9 ("remand . . . is not disputed"); *id*. at 10 ("EcoRights . . . does not oppose remand").  The only question is whether the remand should be accompanied by vacatur of the challenged regulation.  As explained in Defendants' prior memorandum, necessary prerequisites to vacatur are a determination of jurisdiction and a finding of an Administrative Procedure Act ("APA") violation.  *See* Mem. Regarding Prop. Remand with Vacatur ("Defs' Mem."), ECF No. 55, at 3-4.  No such findings have been made here.  Therefore, the remand must be without vacatur.

    **I.**    **The *Allied-Signal* Test Does Not Apply Here**

In arguing for vacatur, Plaintiffs ask the Court to apply "the *Allied-Signal* factors," Pls' Mem. at 5, but that legal standard is inapplicable here.  The *Allied-Signal* inquiry is a test to determine the appropriate remedy—*i.e.*, whether to vacate—*once an agency action has been found invalid*.  *See Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150 (D.C. Cir.

1993) ("An *inadequately supported* rule, however, need not necessarily be vacated.") (emphasis added); *see also Nat'l Parks Conservation Ass'n v. Salazar*, 660 F. Supp. 2d 3, 4 (D.D.C. 2009) (explaining that "in *Allied-Signal*," the "court remanded and vacated an agency action only after reaching the merits of the challenge"); *Allina Health Servs. v. Sebelius*, 904 F. Supp. 2d 75, 94 (D.D.C. 2012), rev'd in part on other grounds, 746 F.3d 1102 (D.C. Cir. 2014) ("'[T]he law of this circuit' governing remedies in cases involving *flawed agency actions* is the *Allied-Signal* test.") (emphasis added). In other words, the court in *Allied-Signal* "laid out the operative test for whether to vacate a *deficient* agency action during remand." *Standing Rock Sioux Tribe v. United States Army Corps of Eng'rs*, 471 F. Supp. 3d 71, 79 (D.D.C. 2020), rev'd in part on other grounds, 985 F.3d 1032, 1051 (D.C. Cir. 2021) (emphasis added). Even a cursory look at the *Allied-Signal* test reveals that it does not apply in situations where a court has not yet found a violation. One of the *Allied-Signal* factors is "the seriousness of the order's deficiencies," so a court necessarily must already have found a deficiency when it applies the *Allied-Signal* test.

Indeed, Plaintiffs' own memorandum makes clear that the *Allied-Signal* test applies only where a court has already found an APA violation. Plaintiffs argue that "vacatur is the presumptive remedy for agency actions *that are contrary to law*," and that vacatur is "the APA's default remedy for *unlawful* agency action," Pls' Mem. at 2-3 (emphasis added). And Plaintiffs rely exclusively on cases in which courts ordered vacatur as a remedy for APA violations.

In short, the *Allied-Signal* inquiry is a test for deciding an appropriate remedy for an APA violation. Plaintiffs want to skip ahead to a remedy before there has even been a determination on the merits or of jurisdiction. Notwithstanding Plaintiffs' calling the rule at issue in Claim Four EPA's "illegal rule" throughout its brief, the Court has simply made no such finding. The *Allied-Signal* factors are inapplicable here.

## II. Vacatur Would Be Improper Without a Judicial Determination that the Regulation Violates the APA

As Defendants explained in their prior memorandum, the APA's judicial-review provisions provide for vacatur only when the agency action has been found invalid. Defs' Mem. at 3-4. Defendants cited several cases in which courts determined they could not vacate agency regulations without judicial consideration of the merits. Plaintiffs do not dispute the holdings of those cases but instead note that in some of them, the government had requested vacatur. Pls' Mem. at 16. Plaintiffs do not explain why that should matter. If anything, there would be *more* reason to vacate where the government seeks vacatur than where, as here, it opposes vacatur. The fact that courts decline to vacate even when vacatur is sought by the government only strengthens Defendants' argument that vacatur would be improper here.[1]

Plaintiffs also briefly mention the out-of-circuit decisions that have permitted vacatur prior to a merits determination. Pls' Mem. at 16. Defendants already identified those decisions and explained why the Court should not follow them, Defs' Mem. at 4 n.2, and Plaintiffs failed to respond to those arguments. Moreover, since Plaintiffs filed their memorandum, the Supreme Court stayed the order issued by the district court in one of those cases, *In re Clean Water Act Rulemaking*, 2021 U.S. Dist. LEXIS 203567 (N.D. Cal. Oct. 21, 2021), insofar as the district

---

[1] Defendants' prior memorandum cites *Utility Solid Waste Activities Group v. EPA*, 901 F.3d 414 (D.C. Cir. 2018), which describes the standard for a voluntary remand without vacatur. Plaintiffs note that in that case, "the Court actually vacated two provisions of the challenged rule[.]" Pls. Mem. at 9. But the D.C. Circuit did so only after finding that those provisions violated the APA. *See Util. Solid Waste Activities Grp.*, 901 F.3d at 429 ("The Final Rule's approach of relying on leak detection followed by closure is arbitrary and contrary to RCRA."); *id*. at 431 ("The EPA's regulation of clay-lined impoundments suffers from the same lack of support as its regulation of unlined impoundments."). Plaintiffs also note that, earlier in the same litigation, the D.C. Circuit granted the agency's motion to remand certain provisions with vacatur. But the agency expressly acknowledged that it had not provided meaningful notice and comment as to those provisions. *See* Respond. EPA's Mot. for Voluntary Remand of Specific Regulatory Provisions, at 4-5, *Utility Solid Waste Activities Group v. EPA*, No. 15-1219 (D.C. Cir. April 18, 2016).

court's order had vacated the agency rule at issue in the case when granting the agency's motion to remand. *See Louisiana v. American Rivers*, No. 21-539, 2022 U.S. LEXIS 1902, at *1 (U.S. Apr. 6, 2022).

Next, Plaintiffs suggest that the Court should proceed to resolve the merits of Claim Four. Defs' Mem. at 15. As an initial matter, that suggestion is inconsistent with Plaintiffs' acknowledgment that remand is appropriate here (Pls' Mem. at 9, 10) because a voluntary remand is an alternative to a resolution on the merits. If Plaintiffs had wanted the Court to decide the merits, they could have opposed remand. But having already agreed to remand, Plaintiffs' belated suggestion that the Court resolve the merits should not be credited.

Moreover, Plaintiffs fail to show any good reason for resolving the merits instead of remanding. Given that all parties now agree to remand, that is the most appropriate way forward. Also, as Defendants explained previously, a remand would ensure that the Court does not prematurely intervene in the agency's process and would promote judicial economy and preserve the parties' and the Court's resources. Defs' Mem. at 7. Plaintiffs argue that vacatur would not interfere with EPA's administrative process. Pls' Mem. at 13-14. But Plaintiffs ignore that the D.C. Circuit has recognized the benefits of "letting the administrative process run its course before binding parties to a judicial decision[.]" *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 386 (D.C. Cir. 2012). Doing so "prevents courts from 'entangling themselves in abstract disagreements over administrative policies, and . . . protect[s] the agencies from judicial interference' in an ongoing decision-making process." *Id*. at 386-87. Remand would thus avoid any unnecessary encroaching on a co-equal branch of government.

Plaintiffs also claim that "[t]here are no resources left to conserve here and no work that would be saved by not vacating [the challenged] regulation." Pls' Mem. at 14-15. But this claim

overlooks that remanding would conserve the resources of the Court, as it would be unnecessary to adjudicate the several issues raised in the parties' briefing concerning Claim Four if the Court remands. The Court plainly has an "interest in avoiding unnecessary adjudication[.]" *AT&T Corp. v. FCC*, 349 F.3d 692, 699 (D.C. Cir. 2003). And "unnecessary adjudication" certainly includes resolving the merits of a challenge to a regulation that will soon be proposed for revision. Plaintiffs also overlook the potential appellate litigation that could follow a ruling on the merits, and the associated resources of the parties and the D.C. Circuit that would be consumed if either party were to appeal. A remand, in contrast, would not result in any appeal because both sides agree to remand and, in any event, "[a] remand order usually is not a final decision" and therefore cannot be appealed. *Lake Pilots Ass'n v. United States Coast Guard*, 359 F.3d 624, 625 (D.C. Cir. 2004). Accordingly, a remand should conserve resources and avoid protracted litigation.

### III.     Plaintiffs Will Not Suffer Harm If the Court Remands Without Vacatur

Plaintiffs claim they would be harmed by "non-vacatur." Pls' Mem. at 10. But, as already discussed, in the absence of a finding of an APA violation, there is no basis to order the remedy of vacatur. *See* Defs' Br. at 3-4. That is true regardless of any supposed harm to Plaintiffs.

In any event, Plaintiffs have presented no credible basis to conclude that they will suffer harm if the challenged regulation is not vacated (and if, instead, EPA is allowed to revise the regulation in the near future through notice and comment rulemaking). As explained in Defendants' prior memorandum, Plaintiffs' concern that EPA might withhold non-responsive portions of records is speculative and implausible. Defs' Br. at 9-10. And even if a portion of a record were improperly withheld from Plaintiffs, they would be able to compel disclosure of the information by bringing suit under the FOIA. *Id.* at 10. Plaintiffs do not dispute that they could do so, and they do not even attempt to distinguish the D.C. Circuit decisions indicating that the

burden of having to file another lawsuit does not constitute cognizable hardship. *Id*. Thus, Plaintiffs have failed to demonstrate prejudice.

Plaintiffs try *for a fourth time* to show that EPA has withheld non-responsive portions of records. *See* Pls' Mem. at 11; Defs' Mem. at 9-10 (addressing Plaintiffs' first three attempts). As an initial matter, Plaintiffs should not be permitted to create needless satellite litigation over the propriety of FOIA responses that are not at issue in this case. Nevertheless, to the extent the Court might address Plaintiffs' new submissions, Defendants note that several of the new examples involve instances where EPA withheld information under a FOIA exemption and also simply explained that the information was non-responsive. *See* Pls' Ex. 1, ECF No. 57-2, at 2-8, 12; *see also* Defs' Mem. at 9 (addressing similar withholdings). Other examples involve information EPA determined to be a separate record, not a portion of a record. *See* Pls' Ex. 1, at 9-11, 13-14; *see also* Defs' Mem. at 9-10 (addressing similar withholdings).[2] As to the remaining examples, Plaintiff provides no evidence indicating when the records (which date to 2015) were processed by EPA, and EPA believes they likely were processed well before the 2019 Rule was issued. *See* Pls' Exs. 2, 3, ECF No. 57-3, 57-4; *see also* Defs' Mem. at 9 (addressing similar withholdings). Accordingly, just as with the examples Plaintiffs identified previously, these new examples do not demonstrate that EPA construes its regulations to authorize the withholding of non-responsive portions of records.

---

[2] Plaintiffs dispute that the withheld information actually constitutes a separate record, and they point to arguments in two briefs that they filed in another lawsuit on this issue. Pls' Mem. at 6. Plaintiffs' submission of those lengthy briefs only underscores why the Court should avoid needless satellite litigation in this case. Moreover, Plaintiffs' argument misses the point. Regardless of whether a court might ultimately agree or disagree with EPA's position that the information constitutes a separate record, the relevant point is that *EPA determined that they were separate records*, not portions of records. Therefore, those withholdings are not evidence that EPA believes it may withhold nonresponsive portions of records.

Finally, Plaintiffs' claim of harm is baffling considering that none of the post-Rule withholdings they have cited involve information of any interest whatsoever to Plaintiffs. Instead, the withheld information included things such as internal EPA conference call information, internal URLs, or identifying information of the EPA employees who converted an Outlook calendar into a PDF document as part of the FOIA production process. Defs' Mem. at 9. Plaintiffs cannot credibly contend that they have even the slightest interest in such information, or that the potential that similar information might be withheld in the future somehow justifies vacating the challenged regulation.

For these reasons, if the Court remands claim four (as all parties agree it should), the remand should be *without* vacatur. There has been no finding of an APA violation and, thus, no basis to vacate.

Respectfully submitted,

BRIAN D. NETTER
Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director, Federal Programs Branch

/s/ *Joshua Kolsky*
JOSHUA M. KOLSKY
Trial Attorney
D.C. Bar No. 993430
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW Washington, DC 20005
Tel.: (202) 305-7664
Fax: (202) 616-8470
E-mail: joshua.kolsky@usdoj.gov

*Attorneys for Defendants*