**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**ECOLOGICAL RIGHTS FOUNDATION and OUR CHILDREN'S EARTH FOUNDATION,**

*Plaintiffs*,

**v.**

**U.S. ENVIRONMENTAL PROTECTION AGENCY, *et al.*,**

*Defendants*.

---

Civil Action No. 19-2181 (FYP)

**MEMORANDUM OPINION**

In 2019, the Environmental Protection Agency ("EPA") amended its regulations pertaining to the processing of Freedom of Information Act ("FOIA") requests.  In response, several entities that regularly submit FOIA requests to the EPA filed suit to challenge the legality of the amendments.  After several rounds of case consolidation, briefing, and settlement negotiations, all that remains are four claims brought by Plaintiffs Ecological Rights Foundation and Our Children's Earth Foundation ("EcoRights").  Defendants EPA and its Administrator, Michael Regan,[1] now move to dismiss, and Plaintiffs cross-move for summary judgment.  For the reasons stated below, the Court grants Defendants' Motion to Dismiss as to Claims 1, 2, and 5; and will remand Claim 4 without vacatur.  The Court denies EcoRights' Cross-Motion for Partial Summary Judgment.

---

[1]      Michael Regan is automatically substituted for defendant Andrew Wheeler pursuant to Federal Rule of Civil Procedure 25(d).

# BACKGROUND

## I.    Factual Background

On June 26, 2019, the EPA published a Freedom of Information Act Regulations Update (the "2019 Rule") in the Federal Register.  *See* 84 Fed. Reg. 30028.[2]  According to the EPA, the agency was "tak[ing] final action to revise the Agency's regulations under the [FOIA] . . . by updating the process by which the public may access information about EPA actions and activities."  *See id.*  The 2019 Rule modified the EPA's FOIA regulations "to implement statutory updates, correct obsolete information, and reflect internal EPA realignment and processing changes to improve the Agency's FOIA response process."  *See id.*  The amendments were intended to "bring EPA's regulations into compliance with nondiscretionary provisions of the amended [FOIA] statute and reflect changes in the Agency's organization, procedure, or practice."  *See id.* at 30029.  The agency promulgated the new regulations without notice and comment, invoking the procedural and good-cause exceptions to notice-and-comment rulemaking.  *See id.*  The 2019 Rule became effective on July 26, 2019, thirty days after it was published in the Federal Register.  *See id.* at 30028.  As relevant here, the 2019 Rule made four changes to the EPA's FOIA procedures.

### A.    Requiring the Submission of All Requests to EPA's National FOIA Office

The 2019 Rule removed the option of submitting FOIA requests directly to regional offices of the EPA.  *See* 40 C.F.R. § 2.101; 84 Fed. Reg. at 30030, 30032–33.[3]  Under the prior

---

[2]    Prior to 2019, the EPA last amended its FOIA regulations by final rule issued on November 5, 2002.  *See* 67 Fed. Reg. 67303.

[3]    40 C.F.R. § 2.101(a) provides:

> (a)   Requesters must submit all requests for records from EPA under the FOIA in writing

regulations, members of the public could mail FOIA requests either to the agency's headquarters, or to one of ten regional EPA offices; people could also send requests by e-mail directly to a regional office. *See* 40 C.F.R. § 2.101(a) (2018).  The 2019 Rule, by contrast, requires all FOIA requests to be submitted to the EPA's National FOIA Office, either electronically (via the agency's FOIA submission website, FOIAonline, or another government submission website, such as FOIA.gov), or via U.S. mail or overnight delivery.  *See* 84 Fed. Reg. at 30030; 40 C.F.R. § 2.101(a).  The revised regulation provides that the National FOIA Office will then assign FOIA requests to the appropriate regional or headquarters office for processing.  *See* 40 C.F.R. § 2.103(a).  According to the EPA, this revision was designed to "minimize the number of misdirected requests sent to the Agency" and "to address" a provision of the 2007 FOIA statutory amendments that "decreased the amount of time an agency may take to route a request

---

and by one of the following methods:

(1)  EPA's FOIA submission website at https://www.foiaonline.gov;

(2)  An electronic government submission website established pursuant to 5 U.S.C. 552(m), such as FOIA.gov;

(3)  U.S. Mail sent to the following address: National FOIA Office, U.S. Environmental Protection Agency, 1200 Pennsylvania Avenue NW (2310A), Washington, DC 20460; or

(4)  Overnight delivery service to National FOIA Office, U.S. Environmental Protection Agency, 1200 Pennsylvania NW, Room 5315, Washington, DC 20460.  EPA will not treat a request submitted by any other method as a FOIA request, and the Agency will not re-route the request.  The requester or requester organization must include the full name of their point of contact and their mailing address for EPA to process the request.  For all requests, requesters should provide an email address and daytime telephone number whenever possible.  For requests submitted through EPA's FOIA submission website or as provided by an electronic government submission website established pursuant to 5 U.S.C. 552(m), requesters must include an email address.  For requests submitted through U.S. Mail, the requester must mark both the request letter and envelope "Freedom of Information Act Request."  The requester should not provide social security numbers when making a request for information under the FOIA.  Requesters submitting requests electronically must do so before 5:00 p.m. Eastern Time for the Agency to consider the request as received on that date.

to the appropriate component of the agency to ten-working days or less."  *See* 84 Fed. Reg. at

30030 (citing 5 U.S.C. 552(a)(6)(A)(ii)).

### B.    Authorizing EPA Administrator to Make Final FOIA Determinations

The 2019 Rule includes the EPA Administrator on a list of officials who are authorized to

"issue final determinations whether to release or withhold a record" under the FOIA.  *See* 40

C.F.R. § 2.103(b) [4]; 84 Fed. Reg. at 30031.  According to the agency, that revision "eliminates a

potential conflict in the existing regulations and ensures consistency of responses across the

Agency;" and also "simplifies and consolidates section 2.103(b), which empowered the 'head of

an office, or that individual's designee' to grant or deny requests, and section 2.104(h), which

empowered division directors or equivalents authority to issue 'denials.'"  *See* 84 Fed. Reg. at

30031.  Notably, the EPA retained and made no changes to a preexisting regulation, 40 C.F.R.

§ 2.104(j), which established that "[a]n adverse determination by the Administrator on an initial

request will serve as the final action of the Agency."  *Compare id.* § 2.104(j)(2), *with id.*

§ 2.104(j)(3) (2018).

### C.    Authorizing EPA Officials to Withhold a "Portion of a Record on the Basis of Responsiveness"

Revised § 2.103(b) also purports to authorize EPA officials to "issue final determinations

whether to release or withhold a record or a portion of a record on the basis of responsiveness or

---

[4]       40 C.F.R. § 2.103(b) reads:

(b)  Authority to issue final determinations.  The Administrator, Deputy Administrators,
Assistant Administrators, Deputy Assistant Administrators, Regional Administrators,
Deputy Regional Administrators, General Counsel, Deputy General Counsels,
Regional Counsels, Deputy Regional Counsels, and Inspector General or those
individuals' delegates, are authorized to make determinations required by 5 U.S.C.
552(a)(6)(A), including to issue final determinations whether to release or withhold a
record or a portion of a record on the basis of responsiveness or under one or more
exemptions under the FOIA, and to issue "no records" responses.

under one or more exemptions under the FOIA, and to issue 'no records' responses." *See* 40 C.F.R. § 2.103(b); 84 Fed. Reg. at 30033.  The agency did not explain why it added this language.  The parties agree that the Agency does not have authority to withhold records on the basis of responsiveness, under controlling case law.  *See* ECF No. 26 (Defendants' Motion to Dismiss) ("Def. MTD") at 20 (citing *Am. Immigr. Laws. Ass'n v. Exec. Off. for Immigr. Rev.*, 830 F.3d 667, 677 (D.C. Cir. 2016)); ECF No. 28 (Plaintiffs' Cross Motion for Summary Judgment) ("Pl. MSJ") at 27.

### D.   Other Modifications

Finally, the 2019 Rule modifies language related to the EPA's aggregation of FOIA requests, the fees charged for processing requests, expedited processing of requests, and multi-track processing, whereby the EPA manages requests in accordance with perceived complexity. *See* 40 C.F.R § 2.107(i) (aggregation); *id.* § 2.107 (schedule of fees); *id.* § 2.104(f) (expedited processing); *id.* § 2.104(c) (multi-track processing).  Those modifications, for the most part, make grammatical and stylistic changes, while leaving the substance of the regulations untouched.  *Compare, e.g.*, *id.* § 2.104(c) *with id.* § 2.104(c) (2018).  The only substantive change is to the limitations on charging fees the EPA adopts.  *Id.* § 2.107(d)(6).[5]  There, the EPA

---

[5]      The regulation reads:

> (6)  If EPA fails to comply with the FOIA's time limits for responding to a request, EPA will not charge search fees, or, in the instance of requesters described in paragraphs (b)(4) through (6) of this section, duplication fees, except as follows:
>
> (i)  If EPA determined that unusual circumstances as defined by the FOIA apply and the Agency provided timely written notice to the requester in accordance with the FOIA, a failure to comply with the time limit shall be excused for an additional 10 working days;
>
> (ii)  If EPA determined that unusual circumstances as defined by the FOIA apply and more than 5,000 pages are necessary to respond to the request, EPA may charge

modified the circumstances under which it charges search fees, implementing a congressional

directive in the FOIA Improvement Act of 2016.  *See* 130 Stat. 538, 544 ("[T]he head of each

agency . . . shall review the regulations of such agency and shall issue regulations on procedures

for the disclosure of records under [the FOIA], in accordance with the amendments made by [the

2016 Act].").

## II.    Procedural History

Soon after the EPA implemented the 2019 Rule, EcoRights filed a Complaint challenging

the amended regulations in the U.S. District Court for the Northern District of California on July

24, 2019.  *See Ecological Rts. Found. v. EPA*, Case No. 19-cv-3270 (D.D.C.), ECF No. 1

(Complaint).  On October 18, 2019, the Northern District of California granted the EPA's motion

to transfer the case to the District of Columbia.  *See id.*, ECF No. 23.  On April 17, 2020, this

Court consolidated EcoRights' case with two related cases, *Center for Biological Diversity v.*

*EPA*, Case No. 19-cv-2198 (D.D.C.), and *Citizens for Responsibility and Ethics in Washington v.*

*EPA*, Case No. 19-cv-2181 (D.D.C.)  As discussed, *infra*, the two other cases have been settled.

---

search fees, or, in the case of requesters described in paragraph paragraphs (b)(4) through (6) of this section, may charge duplication fees, if the following steps are taken: EPA must have provided timely written notice of unusual circumstances to the requester in accordance with the FOIA and the EPA must have discussed with the requester by written mail, email, or telephone (or made not less than three good-faith attempts to do so) how the requester could effectively limit the scope of the request in accordance with 5 U.S.C. 552(a)(6)(B)(ii), which includes notification to the requester of the availability of the FOIA Public Liaison and the right to seek dispute resolution services from the Office of Government Information Services. If this exception is satisfied, EPA may charge all applicable fees incurred in the processing of the request; or

(iii)    If a court determines that exceptional circumstances exist, as defined by the FOIA, a failure to comply with the time limits shall be excused for the length of time provided by the court order.

*See* 40 C.F.R. § 2.107(d)(6).

EcoRights' Complaint alleges that:

(1) The centralization of the EPA's FOIA processing, as codified in 40 C.F.R. § 2.101(a), violates the FOIA and the APA because it will "inevitably slow" the FOIA process. *See* Compl., ¶ 48.

(2) Allowing the EPA Administrator to make initial and final FOIA determinations, as provided in 40 C.F.R. § 2.103(b), violates the FOIA and the APA because there would be no avenue to appeal such a determination to the agency head, as required by statute. *See id.*, ¶ 51.

(3) Authorizing EPA officials to withhold portions of records based on responsiveness, as codified in 40 C.F.R. § 2.103(b), violates the FOIA and the APA because agencies may not withhold portions of a record based only on responsiveness under well-settled D.C. Circuit precedent. *See id.*, ¶ 57 (citing *Am. Immigr. Laws. Ass'n*, 830 F.3d at 676–79).

(4) The promulgation of the 2019 Rule without notice and comment violates the FOIA and the APA because the EPA's invocation of the procedural and good-cause exceptions was inappropriate; and in any event, certain modified provisions independently require notice-and-comment rulemaking under the FOIA. *See* Compl., ¶ 60.[6]

EcoRights asks the Court to vacate the 2019 Rule, to enjoin the EPA from relying on any of its provisions, and to direct the agency to "promulgate new FOIA regulations, if any, by first providing a proposed rule followed by at least a 30-day public comment period before adopting a final rule." *See id.* at 20.  On May 11, 2020, the EPA moved to dismiss Plaintiff's case under

---

[6]      EcoRights initially asserted an additional claim, challenging modifications to 40 C.F.R. § 2.103(a), but it is no longer pursuing what it originally styled as "Claim 3."  *See* Pl. MSJ at 26 ("EcoRights does not oppose dismissal of its third claim for relief.").

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6); EcoRights cross-moved for partial summary judgment. *See generally* Def. MTD; Pl. MSJ.

On February 10, 2022, the plaintiffs in the two cases consolidated with this one entered a settlement agreement with the EPA. *See* ECF No. 50 (Stipulation of Dismissal); ECF No. 50-1 (Settlement Agreement).[7]   The Court held a hearing on March 3, 2022, to discuss the impact of the Settlement Agreement on EcoRights' claims.  The parties agreed that the Court should rule on the pending motions with respect to Claims 1, 2, and 5; and should remand Claim 4 to the agency.  The parties dispute, however, whether Claim 4 should be remanded with or without vacatur, in light of the Settlement Agreement.  The Court held a motion hearing on April 6, 2022.  The motions are now ripe for decision.

## LEGAL STANDARD

### I.   Subject-Matter Jurisdiction

When a defendant brings a Rule 12(b)(1) motion to dismiss, the plaintiff must demonstrate by a preponderance of the evidence that the court has subject-matter jurisdiction to hear her claims. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *US Ecology, Inc. v. Dep't of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000).  "Because subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim, a Rule 12(b)(1) motion imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *See Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001)

---

[7]     Pursuant to the Settlement Agreement, the EPA agreed, *inter alia*, to sign and submit a notice of proposed rulemaking in which the agency will propose revising the text of 40 C.F.R. § 2.103(b). *See* Settlement Agreement § 1.a.  The NPRM will also solicit public comment on whether the EPA should reinstate any FOIA request submission method that was removed from 40 C.F.R. § 2.101(a). *See id.*  The EPA agreed to sign and publish a notice of final action, if appropriate, after receiving the public comments. *See id.* § 1.b.

(citation omitted).  As a result, "the plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim."  *See id.* at 13–14 (cleaned up).  A federal court lacks jurisdiction if the plaintiff does not establish standing.  *See Lujan*, 504 U.S. at 561 (noting that "[t]he party invoking federal jurisdiction bears the burden of establishing the[] elements" of standing (citation omitted)).

## II.   Failure to State a Claim

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim upon which relief can be granted."  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 552 (2007).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *see id.* at 555, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "[W]hen a district court is reviewing agency action . . . the legal questions raised by a 12(b)(6) motion and a motion for summary judgment are the same."  *See Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1222–23 (D.C. Cir. 1993); *see also Nat'l Auto Dealers Ass'n v. FTC*, 864 F. Supp. 2d 65, 72 (D.D.C. 2012) (noting that motions to dismiss and motions for summary judgment "are normally judged under different legal standards," but "the inquiry in [APA] case[s] is the same" (citation omitted)).  "Under the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record," while "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did."  *See id.* (quoting *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769–770 (9th Cir. 1985)).

9

Notably, the APA provides a "default standard" of judicial review of agency actions when the governing statute does not otherwise provide one: "[a] court must set aside agency action it finds to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *See Tourus Records, Inc. v. DEA*, 259 F.3d 731, 736 (D.C. Cir. 2001) (quoting 5 U.S.C. § 706(2)(A)). "The 'arbitrary and capricious' standard of review as set forth in the APA is highly deferential," and the Court must therefore "presume the validity of agency action." *See Am. Horse Prot. Ass'n v. Yeutter*, 917 F.2d 594, 596 (D.C. Cir. 1990) (citation omitted). Although the "court is not to substitute its judgment for that of the agency[,] . . . the agency nevertheless must examine the relevant data and articulate a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made." *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citations and quotation marks omitted).

## ANALYSIS

### I.  Claim 1: Centralization of the EPA's FOIA Intake Procedures

EcoRights claims that the EPA's centralization of intake for FOIA requests at the agency's Washington, D.C., headquarters, as codified at 40 C.F.R. § 2.101(a), violates Section 706(2)(A) of the APA because the change is "unreasonable, arbitrary, and capricious in light of [the EPA's] overwhelming failure to timely process FOIA requests and the fact that this will inevitably slow that process down further." *See* Compl., ¶ 48.  EcoRights further claims that the new procedure violates Section 552(a)(4)(B) of the FOIA because it "represents an improper withholding of records." *See id.*, ¶ 49.  In response, the EPA argues that EcoRights does not have standing to challenge Section 2.101(a) because it "[has] failed to plausibly allege any

imminent injury arising out of EPA's decision to centralize FOIA intake at the National FOIA

Office," *see* Def. MTD at 9; and that even if EcoRights does have standing, it "fails to plausibly

allege that [the] EPA's modest changes to its FOIA submission procedures were unreasonable,

arbitrary, or capricious," *see id.* at 12.

Standing is a necessary predicate to any exercise of federal jurisdiction.  If it is lacking,

the dispute is not a proper case or controversy under Article III, and a federal court does not have

subject matter jurisdiction to decide the case.  *See Dominguez v. UAL Corp.*, 666 F.3d 1359,

1361 (D.C. Cir. 2012).  Thus, "[w]hen there is doubt about a party's constitutional standing, the

court must resolve the doubt," before proceeding to the merits.  *See Lee's Summit v. Surface*

*Transp. Bd.*, 231 F.3d 39, 41 (D.C. Cir. 2000) (citations omitted); *see also Gutrejman v. United*

*States*, No. 20-cv-266, 2022 WL 856384, at *5 (D.D.C. Mar. 22, 2022) ("It is, of course, a

bedrock principle that Article III courts must, except under unusual circumstances, resolve

jurisdictional defenses before turning to the merits of a dispute." (citing *Steel Co. v. Citizens for*

*a Better Env't*, 523 U.S. 83, 94–95 (1998))).

Standing has three elements:  injury in fact, causation, and redressability.  *See Lujan*, 504

U.S. at 560–61.  First, the plaintiff must show "an invasion of a legally protected interest which

is (a) concrete and particularized," and "(b) actual or imminent, not conjectural or hypothetical."

*Lujan*, 504 U.S. at 560 (cleaned up).  Second, there must be traceable causation from a

defendant's alleged action to a plaintiff's injury.  *See id.*; *see also Fla. Audubon Soc.*, 94 F.3d at

664 ("Causation may thus be said to focus on whether a particular party is appropriate.").  Third,

the plaintiff must establish that it is "likely, as opposed to merely speculative, that the injury will

be redressed by a favorable decision."  *See Lujan*, 504 U.S. at 561 (cleaned up); *see also Fla.*

*Audubon Soc.*, 94 F.3d at 663–64 ("Redressability examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff.").  A plaintiff must establish injury in fact, causation, and redressability separately for each defendant.  *See Garcia v. Stewart*, 531 F. Supp. 3d 194, 205 (D.D.C. 2021) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006)).  "[I]n reviewing the standing question, the court . . . must assume that on the merits the plaintiffs would be successful in their claims."  *Schnitzler v. United States*, 761 F.3d 33, 40 (D.C. Cir. 2014) (citation omitted).

EcoRights' two theories of injury are premised on its "reasonable beliefs" about the likely effects of the new FOIA procedures:  First, EcoRights argues that it "reasonably believes" that delays in the EPA's already slow processing of FOIA requests "will be exacerbated by the 2019 Regulations," s*ee* Pl. MSJ at 8; *see also* Compl., ¶ 9 ("Plaintiffs are harmed by EPA's failure to properly implement FOIA, which threatens Plaintiffs' ability to receive complete and timely record productions in response to their current and future FOIA requests to EPA."); *see id.*, ¶ 11 ("EPA's FOIA Regulations will delay production of records and result in additional records being improperly withheld."); second, EcoRights asserts that it "reasonably anticipates that its requests will be subjected to political interference" because the new regulations "route all requests through the office with the highest density of political appointees, increasing opportunity for political interference with EcoRights' FOIA requests," *see* Pl. MSJ at 9.  Thus, EcoRights relies only on a perceived increase in risk that it will experience problems in the processing of its FOIA requests due to the implementation of the 2019 Rule.  "Although the D.C. Circuit has recognized that 'increases in risk can at times be "injuries in fact" sufficient to confer standing,' the governing standard is not easily met."  *See Public Citizen, Inc. v. Trump*, 297 F.

Supp. 3d 6, 21 (D.D.C. 2018) (quoting *Nat. Res. Def. Council v. EPA*, 464 F.3d 1, 6 (D.C. Cir. 2006)).  The D.C. Circuit "has limited its jurisdiction over cases alleging the possibility of increased-risk-of-harm to those where the plaintiff can show 'both (i) a substantially increased risk of harm and (ii) a substantial probability of harm with that increase taken into account.'"  *See Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 914 (D.C. Cir. 2015) (citation omitted).

EcoRights has not met that standard.  In support of its claim of anticipated delays in the processing of its FOIA requests, EcoRights argues that "EPA Headquarters, the site of massive delay even before increasing its workload, will now be carrying out further FOIA work."  *See* Pl. MSJ at 13–14 (noting that "at the end of 2018, EPA had 2,761 overdue FOIA requests pending[,] . . . more than twice as many overdue requests as two years before, indicating an escalating problem"); *see also* Pl. Reply at 2 (explaining that as evidence, EcoRights relies on "numerous personal experiences, scores of lawsuits challenging EPA's failure to comply, and other sources of information").  But the EPA took steps to address the expected increase in workload at its headquarters due to the centralization of intake:  The agency hired five additional staff members for the EPA's National FOIA Office ("NFO").  *See* ECF No. 26-1 (Declaration of Timothy Epp), ¶¶ 4–5.  Although EcoRights attempts to downplay the significance of the agency's efforts, suggesting that there has been only a "minor staffing increase" that "proves nothing," *see* Pl. MSJ at 15, the staffing increase is certainly relevant in the Court's assessment of whether there is a *substantially* increased risk of delay in the processing of EcoRights' FOIA requests.

Moreover, EcoRights overstates the increase in workload at headquarters associated with the change.  Contrary to EcoRights' contention, the agency has centralized only the

"submission" of FOIA requests, not their processing.  *See* 40 C.F.R. 2.101(a); 84 Fed. Reg. at

30030 (describing changes to the "Methods of Submitting FOIA Requests" and stating that the

"EPA makes the [EPA headquarters] the point of entry for all requests").  Whereas FOIA

processing involves searching for records, and then reviewing the records for responsiveness and

exempt material, *see* ECF No. 26-2 (Declaration of Joan G. Kaminer), Ex. B, Tab 1 at 6–12, the

intake of FOIA requests is substantially less labor-intensive:  It includes only an initial review to

determine whether requests comply with statutory and regulatory requirements; granting or

denying applications for expedited processing, *see id.* at 4–6; and then assigning requests to

appropriate offices within the agency for processing, *see* 40 C.F.R. § 2.103(a).  Further, the

change affects only those requests that would have been made directly to regional offices under

the prior rule, whereas the five requests from EcoRights referenced in its Complaint were made

via the FOIAOnline website — an entry point that remains unchanged.  *See* Compl., ¶¶ 43–45;

Kaminer Decl., Ex. A.  Thus, EcoRights fails to meet its burden to demonstrate that the new

procedure imposes a "substantially increased risk" of delays in the processing of its own FOIA

requests, and a "substantial probability" of delay.  *See Food & Water Watch*, 808 F.3d at 914.[8]

EcoRights relies heavily on *McGehee v. CIA*, 697 F.2d 1095 (D.C. Cir. 1983), to make its

standing argument.  *See* Pl. MSJ at 17; Pl. Reply at 5; *see also* Compl., ¶ 49.  According to

---

[8]       In its Reply, EcoRights attempts to establish a concrete injury by describing the EPA's delay in processing a FOIA request that EcoRights submitted on October 29, 2019.  *See* Pl. Reply at 4 (arguing that "centralization has already begun causing delays").  According to EcoRights, EPA Headquarters "took so long to route the request to EPA Region 9 that it was already 75 days overdue before Region 9 even contacted EcoRights to request an extension."  *See id.* (citing ECF No. 35-1 (Second Declaration of Stuart Wilcox)).  But as the EPA showed in its Surreply, the agency communicated several times with EcoRights after the request was submitted.  *See* ECF No. 53 (Defendants' Surreply) at 1–2 (citing ECF No. 32-3 (Second Declaration of Timothy Epp), ¶¶ 6–12).  Indeed, the EPA issued an initial denial of EcoRights' request for expedited processing on November 1, 2019, before engaging in an extended discussion with EcoRights about its requests for expedited processing and fee waiver.  *See* Second Epp Decl., ¶¶ 6–12.  Thus, the cited incident does not show that EcoRights suffered a concrete, particularized, and actual or imminent injury in fact that establishes standing.  *See Lujan*, 504 U.S. at 560–61.

Plaintiffs, the D.C. Circuit held that a "system adopted for processing documents 'constitutes "withholding" of those documents if its net effect is significantly to impair the requester's ability to obtain the records or significantly to increase the amount of time he must wait to obtain them.'"  *See* Pl. MSJ at 13 (quoting *McGehee*, 697 F.2d at 1110).  Here, because the EPA has adopted a centralization system that EcoRights believes will delay FOIA processing, Plaintiff claims that the asserted delay constitutes a "withholding" of records under the FOIA and thereby confers standing.  As an initial matter, as discussed *supra*, EcoRights has failed to demonstrate that the new policy has caused any meaningful delay in the processing of EcoRights' FOIA requests, which forecloses the argument that such delay constitutes a withholding of records.

But in any event, Plaintiff's reading of *McGehee* is overbroad.  That case did not hold that any agency procedure that results in a slower processing of FOIA requests may be deemed an illegal "withholding" of records.  Rather, the cited portion of *McGehee* addresses a challenge to the CIA's "referral procedure," under which the agency failed to process responsive documents in its possession that originated in other agencies and instead "referred" such requests to the originating agencies.  *See McGehee*, 697 F.2d at 1109–10.  While such a procedure could amount to an effective "withholding" of records — given that the records in question were, in fact, in the CIA's possession — that policy cannot be fairly analogized to the centralization of intake that is at issue here, where it is undisputed that the EPA is processing the records that it possesses, and Plaintiff's complaint is merely that the processing has been slowed down.  Thus, Plaintiff's reliance on *McGehee* is misplaced.[9]

---

[9]        Plaintiffs appear to brush off the EPA's efforts to distinguish *McGehee* by stating that the agency's arguments "lack substance, and, regardless, the Court must assume EcoRights would succeed on the merits of this claim for standing purposes."  *See* Pl. MSJ at 17 (citing *Barker v. Conroy*, 921 F.3d 1118, 1124 (D.C. Cir. 2019)).  It

EcoRights' attempt to allege a second injury — an increased risk of political interference caused by the centralization of FOIA intake — fares no better.  EcoRights provides no facts to substantiate its assertion that the new intake procedures will cause EPA officials to violate the FOIA by making "indefensible decisions" on EcoRights' FOIA requests for "political" reasons. *See* Pl. MSJ at 16.  Instead, EcoRights tries to bolster its political-interference claim by noting that several of the organization's recent FOIA requests have been subjected to an "awareness review process" for "politically charged" requests.  *See* Pl. Reply at 11 (citing Wilcox Decl. ¶ 3, Ex. 2 at 5, Ex. 3 at 14).  But such "awareness review" does not affect the processing of FOIA requests and has no connection to the centralization of intake.  As the EPA explains, the "awareness review process" is a notification process, through which "senior officials" are informed when the agency releases information through the FOIA "that may be of particular interest to the press, the public and/or Congress;" it is intended to allow agency leadership to "respond efficiently to inquiries about such releases."  *See* Def. Surreply at 3 (awareness review is "not an approval process, nor does it alter or eliminate any part of the agency's existing procedures for collecting, reviewing or redacting documents, or preparing responses to FOIA requests." (citing Wilcox Decl., Ex. 4 at 1)).  "Awareness review" thus does not support an inference of political interference in the *processing* of FOIA requests; and EcoRights fails to explain how "awareness review" is relevant to whether the centralization of intake will result in a

---

is true that in *Barker*, the D.C. Circuit explained that "[f]or purposes of the standing inquiry, we assume [the plaintiff] would succeed on the merits of [his or her] claim."  *See Barker*, 921 F.3d at 1124 (citing *Schnitzler*, 761 F.3d at 40).  But even if the Court assumes the validity of Plaintiffs' claim that the centralization policy is arbitrary and capricious, Plaintiff must still make a "colorable legal argument[]" that shows an injury caused by the policy that is likely to be redressed by the remedy it seeks.  *See Ass'n of Am. R.R. v. Dep't of Transp.*, 38 F.3d 582, 585–86 (D.C. Cir. 1994).  As discussed, *supra*, EcoRights has failed to show that the centralization of intake injures it within the meaning of Article III, even if that centralization is arbitrary and capricious.

"substantially increased risk" and "substantial probability" of such political interference.  *See*

*Food & Water Watch*, 808 F.3d at 914.[10]

For the foregoing reasons, EcoRights has not established a substantially increased risk of

harm to its interests as a result of the EPA's centralization of FOIA intake, and it therefore has

not demonstrated an injury that gives it standing to challenge 40 C.F.R. § 2.101(a).  The Court

therefore grants the EPA's Motion to Dismiss Claim 1.

## II.      Claim 2: Unappealable Determinations by the Administrator

EcoRights' second claim challenges the "EPA's decision to allow the Administrator to

make initial determinations on FOIA requests and to bar requesters from appealing those

determinations."  *See* Compl., ¶ 51.  According to EcoRights, this is problematic because the

FOIA "requires that all determinations provide notification of 'the right of such person to appeal

to the head of the agency,'" *see* Compl., ¶ 51 (citing 5 U.S.C. § 552(a)(6)(A)(i)(III)(aa)).

Because the Administrator is the head of the agency, EcoRights argues that a regulation that

allows the Administrator to make the initial determination is invalid because it effectively

removes the appeal right that is guaranteed by FOIA.

The 2019 Rule amended 40 C.F.R. § 2.103(b) to include the Administrator on a list of

officials with authority to issue *final* determinations, as follows:

---

[10]      Both of EcoRights' alleged injuries are also appropriately categorized as "speculative," which also proves
fatal to standing.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409–10 (2013) (standing may not be based on a
speculative chain of possibilities).  EcoRights' theories of injury are premised largely on its own conjecture about
the effects of the new procedures, namely that delays and political interference will increase.  *See* Pl. MSJ at 9.  To
finding standing on these grounds, the Court would need to accept a number of unsupported inferences:  i.e., that
centralization of submissions, as opposed to processing, will result in noticeable delays; that EPA's hiring of
additional staff will not offset those potential delays; and that EPA employees will choose to make "indefensible
decisions" on FOIA requests for "political" reasons.  *See* Pl. MSJ at 16.  Such speculation is "ordinarily fatal to
standing."  *See Elec. Priv. Info. Ctr. v. DOC ("EPIC")*, 928 F.3d 95, 102 (D.C. Cir. 2019) (citation omitted); *see
also id.* at 104 (explaining that standing does not exist where plaintiffs "cannot allege imminent [] harm without
assuming the independent violation of other laws" by a federal agency).

> (II) Authority to issue final determinations.  The Administrator, Deputy Administrators, Assistant Administrators, Deputy Assistant Administrators, Regional Administrators, Deputy Regional Administrators, General Counsel, Deputy General Counsels, Regional Counsels, Deputy Regional Counsels, and Inspector General or those individuals' delegates, are authorized to make determinations required by 5 U.S.C. 552(a)(6)(A), including to issue final determinations whether to release or withhold a record or a portion of a record on the basis of responsiveness or under one or more exemptions under the FOIA, and to issue "no records" responses.

*See* 40 C.F.R. § 2.103(b).[11]  The Administrator's authority to issue *initial* determinations is addressed in another provision that was not modified by the 2019 Rule, 40 C.F.R. § 2.104(j)(2). That regulation provides:  "An adverse determination by the Administrator on an initial request [serves] as the final action of the Agency."  *See id.* § 2.104(j)(2); *see also* 40 C.F.R. 2.104(j)(3) (2018).[12]  The EPA argues that Plaintiff is not injured by the changes made in the 2019 Rule and thus lack standing to challenge the new regulation; that even if Plaintiff had standing, its claim regarding initial determinations is barred by the statute of limitations for challenging agency

---

[11]      The 2019 Rule's amendments to 40 C.F.R. § 2.103(b) are as follows, with deletions in strikeout text and additions in bold text:

> (b) Authority to ~~grant or deny requests~~ **issue final determinations**.  The ~~head of an office~~ **Administrator, Deputy Administrators, Assistant Administrators, Deputy Assistant Administrators, Regional Administrators, Deputy Regional Administrators, General Counsel, Deputy General Counsels, Regional Counsels, Deputy Regional Counsels, and Inspector General** or ~~that individual's designee, is~~ **those individuals' delegates, are** authorized to ~~grant or deny any request for~~ **make determinations required by 5 U.S.C. 552(a)(6)(A), including to issue final determinations whether to release or withhold** a record **or a portion** of ~~that office or other Agency records when appropriate~~ **a record on the basis of responsiveness or under one or more exemptions under the FOIA, and to issue "no records" responses**.

*Compare* 40 C.F.R. § 2.103(b), *with id.* § 2.103(b) (2018).

[12]      Under the FOIA, only final agency actions may be appealed in federal court; anything less than final agency action must be appealed through administrative processes.  *See Pinson v. DOJ*, 69 F. Supp. 3d 125, 131 (D.D.C. 2014) ("A FOIA requester must exhaust his administrative remedies before filing suit in federal court." (citing *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004)).

action; and that, in any event, the FOIA does not confer an absolute right of appeal to an agency head. *See* Def. MTD at 13–19.   The Court agrees with the EPA on all three grounds.

### A.     Standing

As with Claim 1, the Court begins with standing. *See Dominguez*, 666 F.3d at 1361; *see also Gutrejman*, 2022 WL 856384, at *5 (citation omitted).   To challenge the amendment to Section 2.103(b), EcoRights must satisfy the three elements of standing:   injury in fact, causation, and redressability. *See Lujan*, 504 U.S. at 560–61.

EcoRights' claim appears to rest on a misunderstanding of when the Administrator was first empowered to make unappealable initial determinations.   Although EcoRights claims that the 2019 Rule conferred such authority on the Administrator, it appears that the Administrator has been able to make initial FOIA determinations since at least 2002, under 40 C.F.R. § 2.104(j)(3). *See* 67 Fed. Reg. 67303, 67310 (Nov. 5, 2002); 40 C.F.R. § 2.104(j)(3) (2018) ("An adverse determination by the Administrator on an initial request will serve as the final action of the Agency.").[13]   In addition, the Administrator's authority to issue unappealable initial FOIA determinations was acknowledged by 40 C.F.R. § 2.104(h) — also promulgated in 2002 — under which the Administrator delegated his authority to make initial determinations to a series of EPA officials:   The act of delegating that authority proves that the Administrator possessed the authority to begin with. *See* 40 C.F.R. § 2.104(h) (2018)[14]; *see also* 67 Fed. Reg.

---

[13]     Although EcoRights argues that Section 2.104(j)(3) merely reflects that "an appeal decision of the Administrator is the final EPA agency action," *see* Pl. MSJ at 24, that interpretation defies the plain meaning of the words.   The regulation speaks to an "adverse determination by the Administrator on an initial request," not a "decision by the Administrator on appeal." *See* 40 C.F.R. § 2.104(j)(3) (2018).

[14]     The regulations read:

Initial denials of requests.   The Deputy Administrator, Assistant Administrators, Regional Administrators, the General Counsel, the Inspector General, Associate Administrators, and

67303, 67307 (Nov. 5, 2002); ECF No. 29-1 (Second Declaration of Joan Kaminer), Ex. B (delegations manual explaining that delegations allow subordinate agency officials to carry out responsibilities on the Administrator's behalf).

Because the Administrator has had the power to issue unappealable initial FOIA determinations since at least 2002, EcoRights fails to establish that the harm it alleges — i.e., the loss of appeal rights — is caused by the challenged 2019 Rule, and that voiding the amended regulation would redress the asserted injury. *See Lujan*, 504 U.S. at 561. EcoRights' challenge to the amended Section 2.103(b) focuses on the inclusion of the Administrator on a list of officials who can "issue final determinations" on FOIA requests. *See* 40 C.F.R. § 2.103(b). But the added reference to the EPA Administrator does not substantively change the Administrator's authority, as discussed *supra*. *See* 40 C.F.R. § 2.104(j)(3); 40 C.F.R. § 2.104(h). The EPA adopted the new language in the 2019 Rule merely to "simplif[y] and consolidate[] section 2.103(b) . . . and section 2.104(h)." *See* 84 Fed. Reg. at 30031.[15] Because the 2019 Rule challenged by EcoRights is not the cause of the asserted loss of appellate rights, invalidating the new regulation would not redress that alleged harm. *See Ass'n of Am. Physicians & Surgeons v. Sebelius*, 901 F. Supp. 2d 19, 42 (D.D.C. 2012) (holding that injuries "caused by statutes and regulations that pre-date the agency actions plaintiffs' challenge" suffered from "a causation problem" and the harms were "not redressable"); *Atl. Urological Assoc., P.A. v. Leavitt*, 549 F.

---

heads of headquarters staff offices **are delegated the authority to issue initial determinations**. However, the authority to issue initial denials of requests for existing, located records (other than initial denials based solely on § 2.204(d)(1)) may be redelegated only to persons occupying positions not lower than division director or equivalent.

*See* 40 C.F.R. § 2.104(h) (2018) (emphasis added).

[15]    Section 2.103(b) "empowered the 'head of an office, or that individual's designee' to grant or deny requests," and section 2.104(h) "empowered division directors or equivalents authority to issue 'denials.'" *See* 84 Fed. Reg. at 30031.

Supp. 2d 20, 28 (D.D.C. 2008) (finding that a rule that "did not change anything" was not causally linked to the alleged injury and "invalidating it would not afford" any relief).

EcoRights also fails to adequately show that EcoRights itself will be injured by the alleged procedural change. According to EcoRights, now that the Administrator claims the authority to make FOIA determinations, it is likely that he will choose to make determinations on EcoRights' requests; and those determinations will be motivated by "political, personal, and other reasons" that will injure EcoRights. *See* Pl. MSJ at 24–25; Pl. Reply at 11; *see also* ECF No. 11-1 (Declaration of Edward Scher), ¶ 11 (explaining that Plaintiff "believe[s] that this [alleged] change could lead to interference with EcoRights' FOIA requests where they are considered 'politically charged'"); *id.*, ¶ 24 (expressing concern that "decisions on EcoRights' FOIA requests could be more politicized. . . . could be subject to awareness review, political appointee determinations, and other political meddling with FOIA"). Such a claim of future injury "may suffice [for purposes of establishing standing] if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (cleaned up). Neither is the case here.

It is pure speculation that the Administrator will imminently decide one of EcoRights' FOIA requests, or that there is a substantial risk that he will do so. Indeed, despite having the authority to issue initial decisions since at least 2002, no EPA Administrator has ever made an initial determination for any of EcoRights' FOIA requests. *See* Def. Reply at 13; Def. MTD at 15. And even assuming, *arguendo*, that the 2019 Rule confers a new power on the Administrator to issue initial determinations, it is highly unlikely that the head of an agency would engage in the mundane tasks associated with processing FOIA requests. Moreover, even if the

Administrator decided to resolve one of EcoRights' FOIA requests, there is no support for the claim that the Administrator would injure EcoRights by acting "for personal, reputational, and political reasons."  *See* Pl. MSJ at 25.  Simply asserting that "many of EcoRights' FOIA requests are 'politically charged,'" *id.*, is insufficient to establish "certainly impending" political interference by the Administrator, or even a "substantial risk" of such injury.  *See Susan B. Anthony List*, 573 U.S. at 158; *see also EPIC*, 928 F.3d at 102 (explaining that "pure speculation" that a federal agency will not comply with its legal obligations "is ordinarily fatal to standing" (citation omitted)).  The Supreme Court has held that where the challenged statute or regulation "at most authorizes — but does not mandate or direct — the [injury] that [plaintiffs] fear," any "allegations are necessarily conjectural" and there can be no substantial risk of injury based on those facts.  *See Clapper*, 568 U.S. at 412.  Such is the case here.  Thus, EcoRights lacks standing to bring Claim 2.

### B.     Statute of Limitations

Even if EcoRights did have standing to bring Claim 2, its challenge is also barred by the applicable statute of limitations.  A challenge to an agency's regulation constitutes a "civil action commenced against the United States" that is "barred unless the complaint is filed within six years after the right of action first accrues."  *See* 28 U.S.C. § 2401(a); *P&V Enters. v. Army Corps of Eng'rs*, 516 F.3d 1021, 1023 (D.C. Cir. 2008) (considering challenge to rulemaking as pursuant to 28 U.S.C. § 2401(a)); *Daingerfield Island Protective Soc'y v. Babbitt*, 40 F.3d 442, 445 (D.C. Cir. 1994) (applying six-year limitations period to challenge of agency action); *see also Jackson v. Modly*, 949 F.3d 763, 776–78 (D.C. Cir. 2020).

Here, EcoRights is challenging the EPA's decision to "vest the Administrator with authority to make initial FOIA determinations that are not appealable." *See* Pl. MSJ at 17.  But, as noted *supra*, the EPA promulgated the regulation providing that "[a]n adverse determination by the Administrator on an initial request will serve as the final action of the Agency" in 2002. *See* 67 Fed. Reg. 67303, 67310 (Nov. 5, 2002); 40 C.F.R. § 2.104(j)(3) (2018).  EcoRights filed its Complaint challenging the Administrator's authority to make unappealable initial determinations in 2019, well outside of the six-year statute of limitations.  Thus, Claim 2 is barred by the statute of limitations and must be dismissed on this alternative ground.[16]

### C.      Failure to State a Claim

Finally, even assuming that EcoRights has standing and that its challenge is timely, EcoRights fails to state a claim.  EcoRights contends that FOIA confers a right "to appeal a FOIA determination to the head of the agency," and that the 2019 Rule is invalid because it eliminates that statutory right.  *See* Compl., ¶ 51 (citing 5 U.S.C. § 552(a)(6)(A)(i)(III)(aa)); *see also* Pl. MSJ at 18 ("EPA cannot eliminate the right to appeal initial FOIA determinations."); *id.* at 20–22 (explaining that the Administrator may not make initial FOIA determinations because "Congress conferred only appeal authority to the Administrator").  But the asserted statutory right does not bear the significance that EcoRights attempts to attribute to it.

The relevant statute, 5 U.S.C. § 552(a)(6)(A)(i)(III)(aa), provides:

(III)  [I]n the case of an adverse determination —

---

[16]      EcoRights attempts to refute this argument by offering a different reading of the EPA's 2002 regulations. *See* Pl. MSJ at 22–24; Pl. Reply at 8–10.  In Plaintiff's view, 40 C.F.R. § 2.104(j)(2) should be read to provide that "an Administrator determination on an appeal will preclude contrary initial determinations by subordinates on requests for duplicate records" because section 2.104(j)(2) is in the "appeals section" of the regulation.  *See* Pl. Reply at 8.  That reading, however, is tortured, to say the least.  The plain language of the provision indicates that the Administrator may make "[a]n adverse determination . . . on an initial request."  *See* 40 C.F.R. § 2.104(j)(2).

> (aa) the right of such person to appeal to the head of the agency, within a period determined by the head of the agency that is not less than 90 days after the date of such adverse determination; . . . .

*See* 5 U.S.C. § 552(a)(6)(A)(i)(III)(aa).  The Court agrees that the statute refers to "the right . . . to appeal to the head of the agency," *see id.*, and that allowing the EPA Administrator to make initial determinations obviates the appeal right.  But under such circumstances, the Administrator's initial determination simply serves as the final action of the agency, which may be appealed in a court of law.  *See* 40 C.F.R. § 2.104(j)(2) (An "adverse determination by the Administrator on an initial request will serve as the final action of the Agency.").

That conclusion is consistent with the interpretation by courts in this jurisdiction of Subsection (a)(6)(A)(i), which courts have held "relates only to the requester's ability to get into court."  *See Elec. Priv. Info. Ctr. v. DOJ*, 15 F. Supp. 3d 32, 41 (D.D.C. 2014) (citing *Citizens for Responsibility and Ethics in Washington v. FEC*, 711 F.3d 180, 189 (D.C. Cir. 2013) ("*CREW v. FEC*")).  For example, in *National Security Counselors v. Central Intelligence Agency*, 969 F.3d 406 (D.C. Cir. 2020), the D.C. Circuit upheld a CIA policy that did not permit FOIA requesters to administratively appeal decisions on FOIA requests that the agency had deemed improper.  *See Nat'l Sec. Couns. v. CIA*, 898 F. Supp. 2d 233, 247 (D.D.C. 2012), *aff'd sub nom. Nat'l Sec. Couns.*, 969 F.3d at 412.  In that case, the CIA entirely eliminated the opportunity for administrative appeals but, as the court explained, "the unavailability of an administrative appeal would not preclude a requester from seeking judicial review of an agency's decision that a request is improper."  *See id.* at 280.  Instead, the court explained that the lack of administrative appeal meant only that the agency's initial decision served as a final agency action that could be immediately appealed in federal court.  *See id.* at 280 ("[S]uch an agency decision

would be presumptively reviewable under the APA, if not the FOIA itself."); *see also id.* at 281 ("A party appearing before an administrative body cannot be punished for the agency's choice to shoot itself in the foot by refusing to review its own decisions.").

Similarly, when the D.C. Circuit has considered other subsections of Section (a)(6)(A), the court has tied the purpose of those provisions to the ability of a party to reach a federal court. In *CREW v. FEC*, the court considered when "a FOIA requester [must] exhaust administrative appeal remedies before suing in federal district court to challenge an agency's failure to produce requested documents." *See* 711 F.3d at 182. The D.C. Circuit explained that the requirements enumerated in Section 552 (a)(6)(A) are tied directly to administrative exhaustion. *See id.* at 189 ("If the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court."). The court acknowledged that the Section provides "incentive[s] for agencies" to comply with certain requirements, but "recognizes that agencies may not always be able to adhere to" those requirements. *See id.*

Reading the relevant precedents together, the Court concludes that Section (a)(6)(A) relates "to the requester's ability to get into court"; and if an agency chooses to waive any of the requirements in the statute, then the remedy for the FOIA requester is that the agency action is deemed final, and the requester may appeal the agency action in federal court. It follows that any decision by the EPA to eliminate the right of a FOIA requester to file an administrative appeal to the agency head would be permissible; and that such a decision would serve only as a waiver of the administrative exhaustion requirement that would otherwise apply.[17]  Thus, the

---

[17]      EcoRights protests that even if its right to appeal in federal court is preserved, "[a]llowing EPA to bypass

Court rejects Plaintiffs' argument that the Court should strike down any regulation that results in the elimination of the statutorily provided appeal right.  Defendants' Motion to Dismiss Claim 2 is also granted for failure to state a claim.

## III.    Claim 4: Withholding Portions of Responsive Records

In Claim 4, EcoRights challenges 40 C.F.R. § 2.103(b) to the extent that the regulation purports to allow agency officials to withhold portions of responsive records on the ground that those portions are non-responsive to the FOIA request.  *See* Compl., ¶ 57.  The parties agree that "[a]n agency cannot withhold a portion of a record by claiming that portion is not responsive to the request."  *See id.*; *see also* ECF No. 51 (Joint Status Report) at 2; ECF No. 55 (Defendants' Memorandum) at 7 (stating that the "EPA does not claim the authority to withhold portions of responsive records on the grounds that portions are non-responsive"); *see also Am. Immigr. Laws. Ass'n*, 830 F.3d at 670 ("[O]nce the government concludes that a particular record is responsive to a disclosure request, the sole basis on which it may withhold particular information within that record is if the information falls within one of the statutory exemptions from FOIA's disclosure mandate.").  The parties also agree that Claim 4 should be remanded to the agency for proposed modifications to section 2.103(b).  *See* ECF No. 59 (Defendants' Reply Memorandum) at 1 ("The parties agree that the Court should remand Claim Four in this case."); ECF No. 57 (Plaintiffs' Memorandum) at 9 ("remand . . . is not disputed"); *id.* at 10 ("EcoRights . . . does not

---

this mandatory [administrative appeal] process would undermine the 'administrative scheme' and the 'purposes of exhaustion.'"  *See* Pl. MSJ at 19 (quoting *Nat'l Sec. Couns. v. CIA*, 931 F. Supp. 2d 77, 98–100 (D.D.C. 2013)).  In particular, it highlights that elimination of an administrative appeal "prevents requesters from convincing EPA to 'correct its own mistakes,'" requires requesters to "forego the more efficient, quicker, and more economical remedy of an appeal," and "prevent[s] further development [of] the record on appeal."  *See id.*  Plaintiffs' policy arguments carry little weight against the binding D.C. Circuit precedents interpreting Section (a)(6)(A).  Under those precedents, agencies may choose to forego the benefits of administrative exhaustion in this context.

oppose remand").  The parties dispute, however, whether the remand should be accompanied by a vacatur of the challenged regulation.

Judicial authority to vacate rules is derived from the APA, which provides that a court may "set aside agency action" if it determines that the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *See* 5 U.S.C. § 706(2)(A).  As a result, courts cannot vacate agency regulations "without judicial consideration of the merits."  *See Nat'l Parks Conservation Ass'n v. Salazar*, 660 F. Supp. 2d 3, 5 (D.D.C. 2009); *see also WildEarth Guardians v. Bernhardt*, No. 20-cv-56, 2020 WL 6255291, at *1 (D.D.C. Oct. 23, 2020) (remanding without vacatur because court had not reviewed the information underlying the agency decisions and "therefore, it has no basis to vacate the agency action"); *Carpenters Indus. Council v. Salazar*, 734 F. Supp. 2d 126, 136 (D.D.C. 2010) (court lacked authority to order "vacatur without a determination of the merits").  The Court, therefore, has two options at this time:  either to "remand without vacatur or to . . . proceed to the merits."  *Am. Forest Res. Council v. Ashe*, 946 F. Supp. 2d 1, 42 (D.D.C. 2013), *aff'd*, 601 F. App'x 1 (D.C. Cir. 2015).

Here, the Court has an "interest[] in avoiding unnecessary adjudication," and in permitting the "crystalliz[ation of agency] policy before that policy is subjected to judicial review."  *Sec. Indus. & Fin. Markets Ass'n v. CFTC*, 67 F. Supp. 3d 373, 413 (D.D.C. 2014) (quoting *Am. Petrol. Inst. v. EPA*, 683 F.3d 382, 387 (D.C. Cir. 2012)).  The EPA's Settlement Agreement obligates the agency to "propose revising the text of 40 C.F.R. § 2.103(b)," to "solicit public comment on EPA's proposed revisions," and to "sign a notice of final action" regarding the revisions within a specified time frame.  *See* Settlement Agreement, §§ 1.a & b.  Resolving the merits of a challenge to a regulation that may soon be revised makes little sense.  Thus, the

Court will decline to reach the merits of Claim 4 and will remand that claim to the EPA without vacatur.  *See* 5 U.S.C. § 706; *Carpenters Indus. Council*, 734 F. Supp. 2d at 135.

## IV.    Claim 5: Lack of Notice and Comment

EcoRights' final argument takes aim at the entirety of the 2019 Rule, which the EPA promulgated without notice and comment.  *See* 84 Fed. Reg. at 30029.  EcoRights argues that the agency's promulgation of the 2019 Rule without notice-and-comment rulemaking violates § 706(2)(D) of the APA because:  (1) The FOIA independently requires notice-and-comment rulemaking and the EPA may not use APA exceptions to avoid those requirements, *see* Compl., ¶ 60; Pl. MSJ at 35–39; and (2) even if the EPA could rely on the procedural and good-cause exceptions consistent with the FOIA, neither exception applies in this case, *see* Pl. MSJ at 39–40. EcoRights specifically challenges the changes made to 40 C.F.R. §§ 2.102(c), 2.104(c), 2.104(f), and 2.107.  *See id.* at 37; Compl., ¶ 60.[18]

Before proceeding to the merits of EcoRights' claim, the Court must first address the EPA's argument that Plaintiffs lack procedural standing, i.e., standing to challenge only the alleged procedural deficiencies in the EPA's adoption of the 2019 Rule.  *See Gutrejman*, 2022 WL 856384, at *5 ("It is, of course, a bedrock principle that Article III courts must, except under unusual circumstances, resolve jurisdictional defenses before turning to the merits of a dispute."

---

[18]    EcoRights also challenges the EPA's failure to allow for notice and comment on changes made to 40 C.F.R. §§ 2.101(a) and 2.103(b).  *See* Pl. MSJ at 39–43.  But in order to show standing to challenge procedural deficiencies related to either provision, EcoRights must establish that it was substantively harmed by the changes to the regulation.  *See California v. Trump*, No. 19-cv-9602020 WL 1643858, at *7 (D.D.C. Apr. 2, 2020) ("There is no doubt . . . that a plaintiff that is able to establish that an agency failed to comply with the notice and comment procedures of the APA would, nonetheless, have no recourse in an Article III court absent a showing that it suffered or will suffer a concrete injury as a result of policy produced through the allegedly flawed process." (citing *Swanson Grp. Mfg. LLC v. Jewell*, 790 F.3d 235, 239, 244–46 (D.C. Cir. 2015))).  EcoRights' procedural standing to challenge changes to 40 C.F.R. §§ 2.101(a) and 2.103(b), therefore, depends on its standing to challenge the underlying provisions.  Because EcoRights lacks standing to challenge the provisions themselves, *see supra*, it may not challenge the provisions on procedural grounds.

(citation omitted)).  "Standing alone, procedural injuries are not enough to establish an injury in fact."  *See Ranchers-Cattlemen Action Legal Fund, United Stockgrowers of Am. v. Dep't of Agric.*, No. 20-cv-2552, 2021 WL 4462723, at *7 (D.D.C. Sept. 29, 2021).  As the Supreme Court explained in *Summers v. Earth Island Institute*, 555 U.S. 488 (2009), the "deprivation of a procedural right without some concrete interest that is affected by the deprivation — a procedural right *in vacuo* — is insufficient to create Article III standing."  *See id.* at 496.  That includes the deprivation of the right to participate in notice-and-comment rulemaking, which "in and of itself, does not establish an actual injury."  *See Int'l Bhd. of Teamsters v. TSA*, 429 F.3d 1130, 1135 (D.C. Cir. 2005).  "In order to make out a constitutionally cognizable injury, plaintiffs must demonstrate that the allegedly deficient procedures implicate distinct substantive interests as to which Article III standing requirements are independently satisfied."  *See Freedom Republicans, Inc. v. FEC*, 13 F.3d 412, 416 (D.C. Cir. 1994).  EcoRights must establish procedural standing to challenge the lack of notice and comment under both the FOIA and the APA.

To demonstrate standing, EcoRights must show that the changes that the EPA made to its regulations without notice and comment implicate a concrete interest of the organization.  *See Summers*, 555 U.S. at 496.  EcoRights cannot do so for its challenges to 40 C.F.R. §§ 102(c), 104(c), and 104(f) because the changes to those provisions were non-substantive.  A comparison of the pre-2019 language and the post-2019 language for each of those provisions reveals that the agency made grammatical and stylistic changes while leaving the substance of the regulations

untouched.  *Compare, e.g.*, 40 C.F.R. § 2.104(c), *with* 40 C.F.R. § 2.104(c) (2018).[19]  EcoRights

has not shown "that it suffered or will suffer a concrete injury as a result of [the] policy produced

through the allegedly flawed process," because the policy has not meaningfully changed as a

result of the process.  *See California v. Trump*, 2020 WL 1643858, at *7.  Plaintiff is correct

"that in a procedural rights case the burden to show imminence and redressability of injury may

be lessened," *see Int'l Bhd. of Teamsters*, 429 F.3d at 1135; Pl. MSJ at 43–45, but it still bears

the burden of demonstrating "actual injury to [its] concrete interests," *see Ctr. for Law & Educ.

v. Dep't of Educ.*, 396 F.3d 1152, 1160 (D.C. Cir. 2005).  EcoRights understandably struggles to

show how the minor modifications made by the EPA in any way implicate Plaintiffs' interests

other than generally arguing that the EPA would have had to address its comments, which is

insufficient to establish standing.  *See* Pl. Reply at 24–25.

      The only substantive change to the regulations challenged in Claim 5 are the additions

that the EPA made to 40 C.F.R. § 2.107(d)(6).  There, the agency modified the circumstances

under which it will charge search fees, implementing the FOIA Improvement Act of 2016.  *See*

130 Stat. 538.  In 2016, Congress amended the FOIA to "ensure that [it] remains the nation's

premier transparency law" by reducing the "growing backlog" and clarifying a number of

---

[19]    The 2019 Rule's amendments to 40 C.F.R. § 2.104(c) are as follows, with deletions in strikeout text and additions in bold text:

> Multitrack processing.  The Agency uses three or more processing tracks by distinguishing between simple and complex requests based on the amount of work ~~and/or~~ **,** time needed to process the request, **or both,** including limits based on the number of pages involved.  The Agency will advise ~~you~~ the requester of the processing track in which ~~your request has been placed~~ **the Agency placed the request** and ~~of~~ the limits of the different processing tracks.  The Agency may place ~~your~~ **the** request in ~~its~~ **a** slower track~~(s)~~ while providing ~~you~~ **the requester with** the opportunity to limit the scope of ~~your~~ **the** request ~~in order~~ to qualify for faster processing within the specified limits of ~~the~~ **a** faster track~~(s)~~.  If ~~your request is placed~~ **the Agency places the request** in a slower track, the Agency will contact ~~you either by telephone or by letter, whichever is most efficient in each case~~ **the requester**.

exemptions.  *See* S. Rep. No. 114-4, at 3–4 (2015).  As part of that reform, Congress amended

the language of 5 U.S.C. § 552 (a)(4)(A)(viii) to provide that agencies shall not assess fees if the

agency has failed to comply with statutory deadlines, subject to various exceptions.  *See* 130

Stat. at 538–39 ("[A]n agency shall not assess any search fees . . . if the agency has failed to

comply with any time limit."); *see also* 5 U.S.C. § 552(a)(4)(A)(viii).  When Congress made

those changes, it permitted the head of each agency to "issue regulations . . . in accordance with

the amendments made by [the 2016 Act]" within 180 days; but it made clear that the

amendments "shall take effect on the date of enactment . . . and shall apply to any request for

records under [the FOIA] made after the date of enactment."  *See* 130 Stat. at 544–45.

Although the fee provision was meaningfully changed and such changes could cause real

injury, EcoRights falters on another requirement of standing:  redressability.  *See Lujan*, 504

U.S. at 561 ("[I]t must be 'likely,' as opposed to merely 'speculative,' that the injury will be

'redressed by a favorable decision.'" (citation omitted)).  The EPA modified 40 C.F.R.

§ 2.107(d)(6) to incorporate exactly the 2016 Act that already governed all FOIA requests made

after the date of its enactment.  *See* 130 Stat. at 544–45; 84 Fed. Reg. at 30030–31.  Indeed, the

EPA followed Congress's instructions to the letter by copying the required language in the 2016

FOIA amendments and pasting it into the Code of Federal Regulations.  *Compare* 5 U.S.C.

552(a)(4)(viii), *with* 40 C.F.R. § 2.107(d)(6).  Because the statute was self-executing, the

amendment to the the regulations that duplicated the statutory language had no actual effect on

Plaintiff's rights.  Any injury to EcoRights in the form of increased fees was essentially "caused

by [a] statute[] . . . that pre-date[d] the agency action [in amending the regulations, which]

plaintiffs' challenge."  *See Ass'n of Am. Physicians & Surgeons*, 901 F. Supp. 2d at 42; *see also*

*Atl. Urological Assoc., P.A.*, 549 F. Supp. 2d at 28 (where the rule "did not change anything for these Plaintiffs," "invalidating it would not afford them any relief"). Whether the Court invalidates 40 C.F.R. § 2.107(d)(6) or not, the fee provisions in the 2016 Amendments became effective "on the date of enactment" and will continue to "apply to any request for records under [the FOIA] made after the date of enactment." *See* 130 Stat. at 544–45.[20]

For those reasons, the Court will grant the EPA's Motion to Dismiss Claim 5 on standing grounds.

## CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss as to Claims 1, 2, and 5; remand Claim 4 without vacatur; and deny EcoRights' Cross Motion for Summary Judgment. A separate Order will issue this day.

_____
FLORENCE Y. PAN
United States District Judge

Date:  September 12, 2022

---

[20]    EcoRights contends that the 2016 Act set a ceiling on when agencies may charge fees but that the EPA could choose to charge fees in more limited circumstances. Thus, EcoRights argues, it has standing because it could have advocated for a "more constrained" regulation during notice and comment. *See* Pl. Reply at 25 n.12. Plaintiff misapprehends both the statutory structure of the 2016 Act and the action taken by the EPA. As the Court discusses, *supra*, the 2016 Act's fee amendments were self-executing — they apply regardless of whether the EPA incorporated them into the C.F.R. *See* 130 Stat. at 544–45. By adopting Congress's language verbatim, the EPA did not alter Plaintiff's situation: if the EPA had taken no action, Plaintiff would still be subject to the same fees. This fact goes to the heart of redressability and destroys Plaintiff's claim to standing.